# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MICHAEL BRADFORD,                   Case No. 1:20-cv-60
On behalf of himself and those        Barrett, J.
similarly situated,                     Litkovitz, M.J.
        Plaintiff,

        vs.

TEAM PIZZA, INC., et al.,          **REPORT AND**
        Defendants.         **RECOMMENDATION**

This matter is before the Court on plaintiff's motion to conditionally certify a Fair Labor

Standards Act ("FLSA") Collective Action and to Authorize Notice (Doc. 5), defendants'

response in opposition (Doc. 13), and plaintiff's reply memorandum (Doc. 14).

## I. Background

Plaintiff Michael Bradford initiated this action in January 2020 on behalf of pizza

delivery drivers who work or worked at defendants' Domino's Pizza stores around the country.

(Doc. 1). Plaintiff brings federal and state law claims against the following defendants: (1) Team

Pizza, Inc., a corporation that allegedly owns and operates Domino's Pizza stores in Ohio,

Kentucky, Indiana, and other states and maintains its principal office in Mason, Ohio; (2) Chris

Short, the owner of Team Pizza, Inc.; (3) "Doe Corporation 1-10," which allegedly are entities

and/or limited liability companies that also comprise part of the Team Pizza Domino's stores;

and (4) "John Doe 1-10," who allegedly are managers and business partners that entered into co-

owner relationships with defendant Chris Short. Plaintiff alleges that defendants violated the

minimum wage provision of the FLSA and Ohio law by (1) failing to properly claim a tip credit

from the wages of pizza delivery drivers "because plaintiff and the FLSA collective were paid at

a wage rate lower than Defendants informed them that they would be paid"; and (2) requiring

delivery drivers to pay for automobile expenses and other job-related expenses out of pocket and not properly reimbursing them for these expenses.  (Doc. 1 at ¶¶ 127, 129).

## II.  Legal Standard

The FLSA requires employers to pay the federal minimum wage and overtime pay to employees covered by the Act's overtime provisions.  *See* 29 U.S.C. §§ 206(a), 207(a). Employers who violate these provisions may be subject to a collective action by similarly situated employees who affirmatively consent in writing to participate in the action.  29 U.S.C. § 216(b).

FLSA lawsuits typically proceed in two stages.  At the first stage, the Court determines whether to conditionally certify the collective class and send notice of the lawsuit to putative class members.  *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 874 (S.D. Ohio 2017) (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011)).  "At the second stage, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiffs' claims."  *Id.*

 In deciding whether to conditionally certify a collective class during the first stage, the Court must determine whether the plaintiff has shown that the class of employees he seeks to represent are "similarly situated."  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (citing *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002)). Because this determination is made at or before the beginning of discovery, the standard is "fairly lenient," and a plaintiff need only make a "modest showing" that he is similarly situated to the putative class members.  *Hamm*, 275 F. Supp. 3d at 874; *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).  "A plaintiff can make this showing by demonstrating that he and the other putative class members suffer from a single, FLSA-violating

policy or [that] their claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 894-95 (S.D. Ohio 2018) (citations and internal quotation marks omitted). Once the FLSA class is conditionally certified, "notice is distributed to the class, putative class members return the opt-in forms sent to them, and the parties conduct discovery." *Id.* at 895 (quoting *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *2, (S.D. Ohio Feb. 26, 2015)).

Unlike the first stage, which occurs at the beginning of discovery, the second stage of the certification process takes place after discovery has concluded, and courts will examine more closely the question of whether particular members of a class are, in fact, "similarly situated." *Comer*, 454 F.3d at 546-47. Because the Court has much more information at the second stage, the issue is viewed with "greater scrutiny." *Hall*, 299 F. Supp. 3d at 895.

## III. Conditional Certification

Plaintiff moves to conditionally certify the following FLSA collective class: "All current and former Domino's Pizza delivery drivers who worked at any location nationwide owned/operated by Defendants Team Pizza, Inc. and/or Chris Short within three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter." (Doc. 5 at 1). Plaintiff argues that he has met his burden of proof at the first stage to conditionally certify the collective action. Plaintiff cites a number of cases from this Court and other courts around the country that have granted conditional FLSA collective action certification in pizza delivery cases involving similar claims. (*Id.* at 8-9).

At the first stage, the plaintiff "must show only that his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 547 (internal

3

quotations and citations omitted).  "Plaintiffs are similarly situated 'when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'"  *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (quoting *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)).  At this juncture of the proceedings, the Court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility."  *Id.* (quoting *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015)).  In determining the similarly situated question, the Court considers the following non-exclusive factors: "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted; and whether as a matter of sound class management, a manageable class exists."  *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, at *2 (S.D. Ohio Aug. 15, 2017) (quoting *Lewis*, 789 F. Supp. 2d at 868).

In support of his motion, plaintiff submits a single declaration in which he declares that he worked as a delivery driver at Team Pizza's Domino's Pizza store in Akron, Ohio from June 2017 to January 2020.  (Bradford Declaration, Doc. 5-1 at ¶ 3).  Plaintiff states that he was paid at a tipped wage rate for all hours worked outside the Domino's Pizza store while making deliveries, which amounted to around $5.50 or $6.00 per hour.  (*Id.* at ¶ 5).  Plaintiff received tips during the hours spent on the road making deliveries.  (*Id.* at ¶ 8).  Plaintiff was required to provide his own car while completing deliveries for Team Pizza, and he was required to maintain and pay for a safe, legally operable, insured vehicle for use while delivering food.  (*Id.* at ¶¶ 12-13).  Plaintiff was required to incur costs for gasoline, vehicle parts and fluids, vehicle repair and

maintenance, servicing, registration costs, financing, insurance, cell phone and data charges, finance charges, and depreciation. (*Id.*). Team Pizza neither collected records of expenses that he incurred while making deliveries nor asked him to provide any records of expenses. (*Id.* at ¶ 14). While completing deliveries, plaintiff was reimbursed $.28 per mile until the end of 2019 and $.58 per mile beginning in January 2020. (*Id.* at ¶ 16).

Plaintiff states he learned from his co-workers and managers that other delivery drivers were also paid minimum wage minus a tip credit for all hours worked while completing deliveries, were required by Team Pizza to provide their own cars for use while completing deliveries, and were required to incur costs for vehicle maintenance. (*Id.* at ¶¶ 11-13). Plaintiff never observed other delivery drivers provide records of the expenses they incurred while making deliveries, nor did he see defendants request records of delivery expenses from other delivery drivers when these drivers cashed out at the end of the night. (*Id.* at ¶ 15). Like plaintiff, other delivery drivers were also reimbursed at $.28 per mile until the end of 2019 and $.58 per mile beginning in January 2020. (*Id.* at ¶ 18). Plaintiff states that these coworkers— including "Chad, Tim, Brandon, Donna and others"—completed the same job duties as him and checked out at the end of their shifts in the same manner as him. (*Id.* at ¶ 19). In addition, manager Chris Hatfield told plaintiff that all delivery drivers were subject to the same terms of employment. (*Id.*).

Based on the information provided in plaintiff's declaration, the Court finds that plaintiff has made a modest factual showing to support certification of a conditional class of delivery drivers at the Akron, Ohio Team Pizza-owned store only. The Court agrees with defendants that the scope of plaintiff's proposed class is too broad, especially given that plaintiff's declaration puts forth no facts establishing he has first-hand knowledge about any other Team Pizza

locations or policies.  Plaintiff has not made a sufficient factual showing to support certification of a conditional class "at any location nationwide owned/operated by Defendants Team Pizza, Inc. and/or Chris Short."  To demonstrate that similarly situated employees exist, "a plaintiff's declaration must at least allege facts sufficient to support an inference that [he] has *actual knowledge* about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours."  *Brandenburg*, 2017 WL 3500411, at *3 (quoting *O'Neal v. Emery Fed. Credit Union*, No. 1:13-cv-22, 2013 WL 4013167 (S.D. Ohio Aug. 6, 2013)).  Plaintiff's declaration fails to support an inference that he has actual knowledge about the job duties and conditions of employment of delivery drivers outside of the Akron store.

The facts set forth in plaintiff's declaration are limited to the conditions and pay of delivery drivers at the Akron store.  There are no affidavits from delivery drivers of any other Team Pizza store around the state or the country, nor has plaintiff alleged facts showing an across-the-board policy concerning pay structures that applies to the Akron and other Team Pizza stores.  *See Engel v. Burlington Coat Factory Direct Corp.*, No. 1:11-cv-759, 2013 WL 2417979, at *4 (S.D. Ohio June 3, 2013) (Barrett, J.) (denying motion for conditional certification on the ground that plaintiffs failed to submit evidence to support a conditional class outside of Ohio).  *See also Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-cv-675, 2017 WL 3437564, at *5 (S.D. Ohio Aug. 10, 2017) (holding that plaintiffs failed to present sufficient evidence to justify the conditional certification of a nationwide class because the three declarations supporting plaintiff's motion only contained information about employees at one of defendant's locations).  Although a plaintiff need only make a "modest" showing that putative class members are similarly situated, the standard is not toothless and requires a factual showing justifying the conditional approval of a nationwide class.  *See, e.g.*, *Cowan v. Nationwide Mut.*

6

*Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *9 (S.D. Ohio Sept. 25, 2019) (approving

nationwide conditional class based on plaintiff's submission of declarations from nine current

and former employees from four different locations in four different states); *Waggoner*, 110 F.

Supp. 3d at 771 (approving nationwide class based on declarations from five plaintiffs who

worked in three different states, as well as job postings to demonstrate that plaintiffs and

potential opt-in plaintiffs were similarly situated); *Rosenbohm v. Cellco P'ship*, No. 2:17-cv-731,

2018 WL 4405836, at *3 (S.D. Ohio Sept. 17, 2018) (granting conditional certification of a

proposed nationwide class based on plaintiff's declaration indicating that he and the putative opt-

in plaintiffs were similarly situated, in addition to 23 declarations of putative opt-in plaintiffs).

Plaintiff has alleged no factual basis to permit the Court to infer that plaintiff has any actual

knowledge about the duties, pay structures, policies, or practices that apply to delivery drivers

outside of the Akron Domino's store.  His first-hand knowledge is limited to his own experience

and those of his co-workers at the Akron store.  (Doc. 5-1 at ¶¶ 10, 11, 12, 13, 15, 18-19).

Plaintiff is correct that a single declaration may, at times, provide sufficient factual

support to certify a conditional, nationwide class; however, plaintiff's declaration falls short.

Plaintiff's declaration is therefore distinguishable from the single declarations presented in other

cases where conditional certification was granted to more than one store location.  *See, e.g.*,

*Brandenburg*, 2017 WL 3500411, at *4 (conditional certification granted to class of delivery

drivers in the Greater Dayton, Ohio area where the plaintiff's declaration "set forth specific facts

regarding manager training, delivery drivers working at multiple Cousin Vinny's locations, and

uniform promotional, management, employment and payroll practices across all Cousin Vinny's

locations").  *Cf. Honaker v. Wright Bros. Pizza*, No. 2:18-cv-1528, 2020 WL 134137, at *2 (S.D.

Ohio Jan. 13, 2020) (conditional certification granted based on declarations of husband and wife

stating they "knew other drivers were subject to the same rules with respect to wages delivery reimbursements because they worked in multiple locations under the same terms, spoke to other delivery drivers about how they were paid, and saw them receive their reimbursements"). Therefore, plaintiff has failed to show that drivers other than those located at the Akron store are similarly situated. For these reasons, the Court concludes that conditional certification of a class consisting of delivery drivers at the Akron store only is warranted. The Court notes that plaintiff may renew his motion for conditional certification if discovery reveals support for expanding the conditional class. *See Engel*, 2013 WL 2417979, at *4 (internal citation omitted).

In their memorandum in opposition, defendants argue that plaintiff has failed to meet the threshold for conditional certification for other reasons as well. As explained below, the Court is not persuaded that these arguments preclude conditional certification as it relates to the Akron store.

Defendants argue that plaintiff has failed to plausibly demonstrate a tip credit claim or minimum wage claim in support of his motion for conditional certification. (Doc. 13 at 6-9). Defendants argue that their alleged failure to reimburse actual vehicle expenses or at the IRS standard business mileage rate (which they dispute) is insufficient to demonstrate an FLSA violation. (*Id.* at 7). Rather, they argue that "Plaintiff must sufficiently demonstrate that his wage rate, inclusive of any tips, fell below the FLSA minimum wage to warrant conditional certification." (*Id.* at 7-8, citing *Shell v. Pie Kingz, LLC*, 415 F. Supp. 3d 769, 772 (N.D. Ohio 2019) (denying conditional certification to proposed class of pizza delivery drivers, in part, because named plaintiff failed to establish he received an "average tip of $2.29/hour" which would make up the shortfall of the federal minimum wage obligation)).

Plaintiff asserts that defendants' position ignores Congress's mandate that employers pay tipped employees at least $2.13 per hour, and employers cannot use an employee's tips to reduce an employer's wage obligations under the FLSA.  (*See* Doc. 14 at 8-12 and numerous cases cited therein).[1]

Whether or not defendants failed to pay the necessary minimum wage in this case goes to the merits of plaintiff's claims.  The Court declines to employ the assumptions utilized by defendants (and the *Shell* court) to conclude there is no plausible violation of the minimum wage laws in this case.  Resolution of plaintiff's claims on the merits is inappropriate at the conditional certification stage.  *See Brandenburg*, 2017 WL 3500411, at *2 ("At no point in resolving the conditional certification issue does the Court opine on, or even consider, the merits of plaintiffs' claims."); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011) (noting that the Court's analysis at the conditional certification stage is whether the proposed class is "similarly situated" and "does not touch upon the merits of plaintiffs' claims").

Finally, defendants argue that plaintiff has failed to show that he and the putative class are "similarly situated" because many Team Pizza delivery drivers are subject to arbitration agreements while plaintiff is not.  (Doc. 13 at 9-12).  Defendants attach a declaration from defendant Chris Short, who attests that 324 current or former delivery drivers executed

---

[1] *See, e.g., Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285-86 (10th Cir. 2017) ("But if the defendants' interpretation of § 206(a) is correct, then an employer can pay a tipped employee nothing at all, so long as that employee's weekly tips—when divided by the number of hours he or she worked—average at least $7.25 an hour. We find this reading of § 206(a) impossible to square with § 203(m)'s plain language: the latter explicitly requires employers to pay their tipped employees *something*, regardless of how much those employees receive in tips.  *See* § 203(m)(1) ('[T]he cash wage paid such employee . . . shall be not less than [$2.13 an hour.]'); *see also Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 553 (7th Cir. 2016) (noting that FLSA 'require[s] some cash payment from the employer . . . no matter how much a worker receives in tips'); *cf. Doty v. Elias*, 733 F.2d 720, 722, 724 (10th Cir. 1984) (rejecting, under previous version of § 203(m), defendant's argument that 'an employer who allows employees to keep their tips complies with [§ 206(a)] so long as the employees make at least as much in tips as they would if they received only the minimum hourly wage'; such interpretation would 'do[ ] violence to the language of § 203(m) and . . . render much of that section superfluous')."

arbitration agreements and agreed to arbitrate certain claims on an individual basis, including

compensation and reimbursement-related claims. (Doc. 13-1 at ¶ 11). Defendants also attach a

true and accurate copy of an example of an executed uniform arbitration agreement. (Exh. A.,

Doc. 13-1 at 3-7).

 "District courts have consistently held that the existence of arbitration agreements is

irrelevant to collective action approval because it raises a merits-based determination." *Thomas*,

2019 WL 4743637, at *3 (internal citation and quotation marks omitted). *See also Clark v.*

*Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 WL 4601930, at *7 (S.D. Ohio Sept. 23, 2019)

("Several courts have found that the presence of arbitration agreements does not defeat a motion

for conditional certification") (collecting cases); *Crosby v. Stage Stores, Inc*., 348 F. Supp. 3d

742, 752 (M.D. Tenn. 2018) (holding that it is inappropriate to consider an arbitration agreement

at the conditional certification stage of a FLSA collective action). The Sixth Circuit has not

directly decided the issue of whether district courts may conditionally authorize notice of an

FLSA collective action where opt-in putative class members may be subject to arbitration

agreements. Nevertheless, the Fifth and Seventh Circuit Courts of Appeals have held that district

courts may not send notice of a collective action when the employer demonstrates by a

preponderance of the evidence the existence of a valid arbitration agreement for that employee.

*In re JPMorgan Chase & Co*., 916 F.3d 494, 502-03 (5th Cir. 2019) ("an employer that seeks to

avoid a collective action, as to a particular employee, has the burden to show, by a

preponderance of the evidence, the existence of a valid arbitration agreement for that

employee"); *Bigger v. Facebook, Inc*., 947 F.3d 1043, 1047 (7th Cir. 2020) ("when a defendant

opposing the issuance of notice alleges that proposed recipients entered arbitration agreements

waiving the right to participate in the action, a court may authorize notice to those individuals

unless (1) no plaintiff contests the existence or validity of the alleged arbitration agreements, or (2) after the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.").

The Court declines to determine at the conditional certification stage whether certain employees of the proposed collective class are subject to a valid arbitration agreement. While defendants have provided evidence in the form of a sample arbitration agreement and a declaration stating that 324 current or former Team Pizza delivery drivers executed such an agreement, there are insufficient facts at this stage regarding the validity of these agreements as to *each* delivery driver defendants seek to exclude from receiving notice of this collective action. *See JPMorgan Chase*, 916 F.3d at 503; *Bigger*, 947 F.3d at 1047. Moreover, given that none of these delivery drivers have joined this suit and defendants cannot presume that drivers with arbitration agreements will ultimately opt-in to this suit, it is premature for the Court consider the arbitration agreements at the conditional certification stage. *See Clark*, 2019 WL 4601930, at *7 (holding that it was premature for the Court to stay proceedings based on arbitration agreements with plaintiffs who have yet to join the suit). Therefore, the Court declines to consider any arbitration agreements at this stage.

Based on the foregoing, plaintiff's motion for conditional certification (Doc. 5) should be **GRANTED** to the extent that it seeks conditional certification of a class of delivery drivers in the Akron, Ohio Team Pizza location.

## IV. Notice Requirements

Given that the Court has determined that conditional certification is warranted for the Akron, Ohio Domino's Pizza location only, the Court now turns to the form and manner of

plaintiff's proposed notice. By "monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Honaker*, 2020 WL 134137, at *3 (quoting *Hall*, 299 F. Supp. 3d at 897-98 (in turn quoting *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 172 (1989)). The Court may facilitate notice to the putative class "so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Id.* (quoting *Swigart*, 276 F.R.D. at 214). The Court has "discretion in deciding how notice is disseminated." *Id.* (quoting *Staggs v. Fuyao Glass Am., Inc.*, No. 3:17-cv-191, 2018 WL 840178, at *2 (S.D. Ohio Feb. 8, 2018) and citing *Brandenburg*, 2017 WL 3500411, at *5). Plaintiff asks for authorization to send the notice attached as Exhibit 2. (Doc. 5-2). Defendants argue that plaintiff's proposed notice class, form of notice, period of notice, method of response, and consent form are defective and should not be approved. (Doc. 13 at 14). As described below, the Court approves the notice, subject to the below requirements and modifications that were raised in the briefings.

### 1. Scope of the Class

Defendants first argue that the notice should be limited to exclude employees subject to arbitration agreements and employees outside of the Akron location. (*Id.*). As explained above, the Court agrees that the proposed class should be limited to the Akron Domino's Pizza location and therefore only these employees or former employees should receive notice of the collective action. However, the Court disagrees that employees who may be subject to arbitration agreements must be excluded from receiving notice and therefore rejects defendants' argument in this regard.

The parties also dispute the temporal scope of the notice, i.e., whether the notice should be sent to employees who worked for the defendant three years prior to the date of the filing of

the lawsuit or three years prior to the date of any decision conditionally certifying the class.[2] While "courts in th[e] [Sixth] Circuit have mixed results in determining when the statute of limitations begins to run for opt-in plaintiffs," *Adams v. Wenco Ashland, Inc.*, No. 1:19-cv-1544, 2020 WL 2615514, at *7 (N.D. Ohio May 22, 2020) (collecting cases), the weight of authority within the Southern District of Ohio indicates the class period should run from the date of an Order granting conditional certification and not the filing of this lawsuit. *See Rosenbohm*, 2018 WL 4405836, at *3; *Hamm*, 275 F. Supp. 3d at 878[3]; *Myers*, 201 F. Supp. 3d at 897 n. 5 (citing *Crescenzo v. O-Tex Pumping, LLC*, No. 1:15-cv-2851, 2016 WL 3277226, at *5 (S.D. Ohio June 15, 2016); *Atkinson*, 2015 WL 853234, at *3)). Therefore, the notice to putative class members should run from the date of any order adopting the undersigned's recommendation.[4]

---

[2] The statute of limitations for FLSA claim is two years, or in the case of a willful violation, three years. *See Lewis*, 789 F. Supp. 2d at 867 ("Under 29 U.S.C. § 255(a), [a] § 216(b) action may be commenced within two years after the cause of action accrued, or within three years if the cause of action arises out of a willful violation.") (citation and internal quotation marks omitted).

[3] In *Hamm*, the Court found the three year period prior to the filing of the complaint was not warranted and reasoned:

> A cause of action under the FLSA accrues on the date that payment is owed. *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234 at *7 (S.D. Ohio Feb. 26, 2015) (Rice, J). In a collective action, a *named* plaintiff's claim is considered to be filed on the date the complaint is filed and he or she files a written consent to join the collective action. *Id.* However, if a party is not named in the complaint, the claim is not considered to be filed until he or she files notice of written consent to become a party plaintiff. *Id.* at *7 (citing 29 U.S.C. § 256).

275 F. Supp. 3d at 878 (emphasis in the original). The opt-in mechanism of the FLSA inherently involves some delay in adding putative members of the class to the lawsuit, and "Congress chose not to automatically toll the statute of limitations from the date the collective action was filed." *Atkinson*, 2015 WL 853234, at *7. As notice to join the suit cannot occur until conditional certification, the date the Court conditionally certifies the class is the operative date from which to run the three-year period.

[4] In the event the claims of opt-in class members may be subject to equitable tolling, the Court may later decide whether equitable tolling is warranted for these putative class members. *See Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842 (S.D. Ohio 2013) (considering motion for equitable tolling of limitations period for putative class members whose claims would otherwise be time-barred after the putative class was conditionally certified); *Engel*, 2013 WL 5177184, at *1 (same). Equitable tolling is an issue to be determined on a case-by-case basis after the putative class member has filed written consent to join the action. *See Brittman v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1046 (S.D. Ohio 2018) (and cases cited therein).

2. **Proposed Period of Notice**

The parties disagree on the proposed notice opt-in period.  Plaintiff argues that a 90-day notice period is appropriate given the size of the class and the likelihood that many mailed notices will be returned as undeliverable.  (Doc. 14 at 17).  Defendants counter that a 45-day opt-in period is sufficient.  (Doc. 13 at 15).  Given that the Court has limited the proposed putative class to the Akron, Ohio Domino's location and the class size will likely be far less than nationwide class number estimated by plaintiff ("well over 1,000 people"), the Court finds that a 90-day opt-in period is unnecessary.  Consistent with this Court's reasoning in *Thomas v. Papa John's Int'l, Inc.*, which involved similar claims and multiple store locations, the Court finds that a 45-day notice period is adequate in this case.  *Thomas*, 2019 WL 4743637, at *5 (Barrett, J).

3. **Plaintiff's Proposed Notice**

The parties disagree on the content of plaintiff's proposed notice.  Defendants present several modifications to the proposed notice and plaintiff objects to many of these modifications.  (Doc. 13 at 15-18; Doc. 14 at 17-20).

a. **Caption**

The caption in the proposed notice reads in large bold letters: "Notice of Opportunity to Join Unpaid Wage Lawsuit."  (Doc 5-2 at 2).  Directly below, the notice states, "A Federal Court authorized this Notice.  It is not a solicitation from a lawyer."  (*Id.*).  The proposed notice caption then lists the case caption, case number, and United States District Court for the Southern District of Ohio.  (*Id.*).

Defendants argue that the "caption" of the proposed notice should be removed "because its inclusion gives an unwarranted 'appearance of judicial endorsement.'"  (Doc. 13 at 15-16) (quoting *Hoffman-La Roche Inc.*, 493 U.S. at 174).  Defendants propose replacing the caption-

like language with "To: All delivery drivers. . . ." and "Re: A collective action lawsuit brought against Team Pizza, Inc., and Chris Short, pursuant to the Fair Labor Standards Act for alleged improper compensation." (Doc. 13 at 16 n.11).

The Court overrules these objections. Including the case caption is not misleading nor a judicial endorsement of the lawsuit. *See Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 735 (S.D. Ohio 2016). Moreover, as plaintiff represents, this case caption has been approved in similar pizza delivery driver cases. *See, e.g., Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2020 WL 1129357, at *3 (S.D. Ohio Mar. 9, 2020). Therefore, the case caption as currently written in the proposed notice is sufficient.

### b. Good Faith Language

Under Section 2 of the proposed notice, entitled "What is this Case About," defendants propose adding the following statement: "Defendants deny the allegations and claim that they did not violate any wage and hour law. Defendants believe that they fully complied with the FLSA in good faith." (Doc. 13 at 16 n.12). Plaintiff does not object to this inclusion. (Doc. 14 at 18). Therefore, the proposed notice should be amended to include this statement.

### c. Potential consequences and responsibilities of joining the lawsuit

Defendants argue that the proposed notice "fails to adequately inform putative opt-ins of the potential consequences and responsibilities of joining the lawsuit, including paying court costs and fees if Defendants prevail, and being potentially subject to participate in discovery and/or appear at a deposition/trial." (Doc. 13 at 17). Defendants propose adding a separate paragraph in Section 3 of the proposed notice, entitled "What are my options," reflecting these potential consequences and responsibilities. (*Id.* at 17 n.13). Plaintiff objects to the inclusion of this language because it "may deter an employee from participating, and that adverse effect is

15

disproportionate to the burden they may face by joining the action."  (Doc. 14 at 18 n.6) (citing cases where courts rejected such language).

Courts have approved notices that adequately describe the opt-in plaintiffs' potential discovery obligations in similar pizza delivery cases.  In *Brandenburg v. Cousin Vinny's Pizza*, this Court approved a notice that included a statement that "opt-in plaintiffs may be required to participate in written discovery and that they may be required to appear for deposition and/or trial."  *Brandenburg*, 2017 WL 3500411, at *9.  The Court explained that the sentence "does nothing more than underscore the obligations that putative class members would have if they opt in as plaintiffs."  *Id.*  Based on *Brandenburg*, this Court also applied the same language in *Thomas v. Papa John's Int'l, Inc.*  2019 WL 4743637, at *6 (Barrett, J.).  In accordance with the *Brandenburg* and *Thomas* cases, the Court concludes that this statement should be included in the notice.

### d.  Initial reference to plaintiff's counsel

Defendants argue that the initial reference to contacting plaintiff's counsel in Section 3 of the proposed notice, entitled "What are my options," should be modified.  (Doc. 13 at 17).  Defendants allege that the reference to plaintiff's counsel is unnecessary, superfluous, and "really is intended to draw unwarranted attention to Plaintiff's counsel."  (*Id.*).  If the reference stands, defendants ask the Court to modify the notice to notify putative class members of their right to select their own counsel.  (*Id.* at 17 n.14).

The Court agrees that the reference in Section 3 to plaintiff's counsel is superfluous and repetitive.  Section 6 of the proposed notice, entitled "The Attorneys Involved," clearly conveys information to putative class members about plaintiff's counsel and how to contact plaintiff's counsel "for free to obtain more information."  (Doc. 5-2).  This section also informs putative

16

class members that they have the right to obtain their own counsel.  The reference to plaintiff's counsel in Section 3, entitled "What are my options," should be removed.

### e. Anti-retaliation language

Defendants argue that the anti-retaliation language included in Section 4 of the proposed notice, entitled "Can My Employer Fire Me or Retaliate Against me if I Join the Lawsuit," should be modified to accurately reflect the possibility, and not the certainty, of damages in connection with any resulting retaliation.  (Doc. 13 at 18).  Defendants seek to remove the bold typeface in the first sentence and modify the second sentence to read: "Retaliation is illegal, and you *may be* entitled to additional money to the extent you suffer any adverse consequences." (*Id.*).  Plaintiff does not object to the proposed change to the second sentence but states that the term "may be" should not be italicized.  (Doc. 14 at 19).  Plaintiff also maintains that the first sentence should be in bold print so putative class members are well-informed of their rights. (*Id.*).

To strike a proper balance between the parties' competing concerns, the Court approves the following language for Section 4 of the proposed notice:

> The law strictly forbids any employer from retaliating against you for participating in the Lawsuit or filing a Consent Form.  Retaliation is illegal, and you may be entitled to additional money to the extent you suffer any adverse consequences.  If you experience any retaliation, you should report it immediately to Plaintiffs' Attorneys or another attorney of your choice.

### 4. Electronic Signatures

Defendants object to allowing opt-in plaintiffs to electronically sign their opt-in consent forms.  (Doc. 13 at 18).  Defendants argue that courts typically only permit electronic signatures in "highly unusual circumstances."  (*Id.*).  Defendants' argument is unavailing.  In permitting the use of electronic signatures for opt-in forms, the Northern District of Ohio recently stated:

District courts in the Sixth Circuit regularly approve notice procedures in which potential opt-in plaintiffs may electronically sign and submit consent forms. *E.g.*, *Brandenburg*, 2017 WL 3500411, at *8 ("[T]he Court will permit potential opt-in plaintiffs to sign their Consent to Join forms electronically via the DocuSign website if they so choose."); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-cv-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017). These courts have typically found that forcing potential opt-in plaintiffs to print and sign their consent forms "force[s] potential opt-in plaintiffs to expend additional time and resources to join the instant lawsuit" and "serve[s] no purpose other than to discourage potential collective members from joining the litigation." *Brandenburg*, 2017 WL 3500411, at *8; *Kim* [*v. Detroit Med. Informatics, LLC*, No. CV 19-11185,] 2019 WL 6307196, at *4 [E.D. Mich. Nov. 25, 2019)], ("Requiring individuals to print and sign their Consent to Join forms and then submit the forms via regular U.S. mail would only serve to discourage potential collective members from joining the litigation and thus would not advance the purposes of the FLSA."). Moreover, "[c]ourts have not found electronic signatures for the purposes of FLSA necessarily less secure, authentic, or reliable," and "have consistently found electronic signatures appropriate and reliable, without a special need." *Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-2251-SHM-cgc, 2017 U.S. Dist. LEXIS 182426, at *4 (W.D. Tenn. Oct. 25, 2017).

*Kilmer v. Burntwood Tavern Holdings LLC*, No. 1:19-cv-02660, 2020 WL 2043335, at *4-5 (N.D. Ohio Apr. 28, 2020). Even though the proposed putative class is limited to the Akron Domino's location, the Court agrees that allowing opt-in plaintiffs in this case to electronically sign and submit consent forms is a practical and reliable method that fulfills the purposes of the FLSA. *See id.* (noting that the class need not be particularly large in order to justify the use of electronic signatures). Moreover, in *Brandenburg* and *Thomas*, which involved similar claims brought by a collective class of pizza delivery drivers, this Court approved the use of electronic signatures for opt-in class members. 2017 WL 3500411, at *5; 2019 WL 4743637, at *6 (Barrett, J.). Therefore, electronic signatures of opt-in consent forms are permitted.

**5. Consent Form**

The parties dispute whether to include certain language in the "consent to join" form. The "consent to join" form includes the following language in the last sentence: "In the event I am not permitted to go forward with this action (for example, if this action is conditionally

18

certified and then decertified), I authorize Plaintiff's counsel to reuse this Consent Form to re-file my claims in a separate or related action against Defendants." (Doc. 5-2 at 5).

Defendants object to this language and argue that "it improperly purports to authorize Plaintiff's counsel to re-file and reuse the Consent Form 'in a separate or related action against Defendants.'" (Doc. 13 at 19). Defendants argue that consent applies only to this present action. (*Id.*). Plaintiff argues that this sentence should not be omitted as it is standard language routinely used by plaintiff's counsel and previously approved by this Court. (Doc. 14 at 20). Given that this language has previously been approved by this Court, the Court rejects defendants' argument. *See Waters*, No. 3:19-cv-372 (Doc. 4-3 at 5), 2020 WL 1129357; *Thomas*, No. 1:17-cv-411 (Doc. 52-1 at 4), 2019 WL 4743637. In addition, the Court agrees with plaintiff that the consent form is an agreement between the employees and plaintiff's counsel; therefore, it is not within defendants' purview to challenge the consent language.

### 6. Requested Class Contact Information

Finally, defendants disagree with the requested class action contact information and specifically argue that plaintiff's request for telephone numbers is unwarranted. (Doc. 13 at 19). The Court agrees that plaintiff's request for contact information regarding putative class members outside of the Akron location is unwarranted for the reasons discussed above. However, the Court concludes that plaintiff's request for telephone numbers of the putative class members at the Akron location—even those who may be subject to arbitration agreements—is appropriate. The consent form allows opt-in plaintiffs to provide their own phone numbers whereas in the cases that defendants cite for purported privacy concerns, courts have held that *defendants* cannot be compelled to release contact information of employees upon a plaintiff's

request.  Accordingly, plaintiff may request contact information, including telephone numbers, from putative class members at the Akron location.

**V.  Conclusion**

Based on the foregoing, it is **RECOMMENDED** that:

1. Plaintiff's Motion to Conditionally Certify a FLSA Collective Action and to Authorize Notice (Doc. 5) be **GRANTED** to the extent the proposed putative class is limited to delivery drivers at the Akron, Ohio Team Pizza location and **DENIED** to the extent it seeks to certify a conditional nationwide class; and

2. Plaintiff shall file an amended notice consistent with the Court's findings herein within fourteen (14) days of the entry of any Order adopting this Report and Recommendation, subject to any additional findings or conclusions of the District Judge.

**IT IS SO RECOMMENDED.**

Date:   6/29/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL BRADFORD,                     Case No. 1:20-cv-60
On behalf of himself and those        Barrett, J.
similarly situated,                   Litkovitz, M.J.
     Plaintiff,

     vs.

TEAM PIZZA, INC., et al.,
     Defendants.

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).