In the United States District Court
for the Southern District of Ohio
Western Division

| | |
|---|---|
| Michael Bradford, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:20-cv-60 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | Magistrate Judge Karen L. Litkovitz |
| Team Pizza, Inc., *et al* | |
| Defendants. | |

## Plaintiffs' Response in Opposition to Defendants' Motion to Compel Arbitration

Nearly four years after Plaintiff William Howell joined this case, Defendants finally decided that it no longer suits them to litigate his claims before this Court. In those four years, Defendants have invoked the litigation machinery and participated extensively in litigation, all without ever compelling Mr. Howell's claims to arbitration. Defendants cannot sleep on the right to arbitrate, keeping it like a card in their back pocket and only pulling it out when it is ready for a do over. And, even if Defendants conduct did not rise to the level of waiver (it does), the arbitration agreement foisted upon Mr. Howell itself dictates that his claims must remain in this forum. As a result, Defendants' Motion to Compel Arbitration should be denied.

1.    **Relevant History**

Defendants attempt to downplay their significant participation in this litigation and exaggerate their insistence on the right to arbitrate over the nearly five-year life of this lawsuit. A review of the case's history demonstrates that the Defendants acted inconsistently with a contractual right to arbitrate.

This case was filed on January 24, 2020. Complaint, Doc. 1. After filing his Complaint, Mr. Bradford filed a Motion to Send Notice to Similarly Situated Employees. (ECF No. 5). Defendants opposed sending notice to its other delivery driver employees, partly based on the argument that some of the delivery driver employees had been required to sign an arbitration agreement. *See* ECF No. 13, PAGEID 115-118.

On June 29, 2020, the Court granted Plaintiff's Motion for Conditional Certification in part, authorizing notice to be disseminated to drivers at the stores where Michael Bradford worked for Defendants. *See* Report & Recommendation Granting in Part and Denying in Part Conditional Certification (ECF No. 20). In its Report & Recommendation, the Court explained that it could not presume that drivers who signed arbitration agreements would join the case, so it would be premature to consider Defendants' arbitration argument at the notice stage. *Id*. The District Court affirmed the Report & Recommendation on October 9, 2020. (ECF No. 32).

While conditional certification was being briefed and decided, the parties began debating the scope of appropriate discovery with respect to both the named Plaintiff and opt-in plaintiffs. In the parties' first Rule 26(f) Report, filed May 27, 2020, Defendants did not mention arbitration at all. (ECF No. 17). Instead, Defendants argued that "each Opt-in should be required to complete a short questionnaire (which will function as their Rule 26(a) disclosure) that will be modeled after

questionnaires endorsed in other cases…" (ECF No. 17, PAGEID 192). According to Defendants, the questionnaire would seek "information critical to the issues of liability and damages, including, but not limited to, the make and model of the vehicle, dates the vehicle was used, average miles driven, and repair expenses incurred."). *Id.* at PAGEID 195. In addition to the questionnaires, Defendants sought full discovery—document requests, interrogatories, and depositions—from 20% of the opt-ins. *Id.* at PAGEID 192 ("In terms of discovery from the Opt-ins, at a minimum, a representative sampling of at least 20% of Opt-in should answer discovery (document requests, interrogatories, and depositions). Plaintiff argued in response that such discovery from the opt-in plaintiffs was not necessary. *Id.* at PAGEID 195.

On September 4, 2020, because of the parties' disagreement regarding what discovery was necessary to adjudicate the claims and defenses at issue, the Court ordered the parties to file cross-motions for summary judgment on the question of how to value vehicle expenses for purposes of FLSA compliance. (ECF No. 27). While the motions were being decided, the Court otherwise stayed discovery. *Id.*

On November 20, 2020, Mr. Howell filed his consent to join this case on November 20, 2020. (ECF Nos. 40, 40-1). Despite now claiming that he signed an arbitration agreement in January 2020, Defendants did not move to compel Mr. Howell's claims to arbitration after his consent to join form was filed.

On May 26, 2021, the Court issued a Report & Recommendation granting Defendants' Motion for Partial Summary Judgment and Denying Plaintiff's Motion for Partial Summary Judgment. (ECF No. 53). On October 19, 2021, the Court overruled Plaintiff's Objections to the Report & Recommendation. (ECF No. 61).

Plaintiff filed a Motion to Certify an Interlocutory Appeal on October 29, 2021. (ECF No. 64).

On November 19, 2021, a year after the FLSA notice period took place, the parties submitted their Second Rule 26(f) Report. (ECF No. 67). Defendants argued therein that opt-in plaintiffs should be required to complete questionnaires if they have not signed arbitration agreements. *Id*. at PAGED 854. With respect to the opt-ins who Defendants alleged had signed arbitration agreements, "Defendants will file a motion to compel arbitration," recognizing that "there would be no basis to conduct discovery with respect to individuals subject to arbitration agreements." *Id*. In this filing, for the first time, Defendants stated that Mr. Howell "signed a binding arbitration agreement." *Id*. at PAGEID 863. They explained that they "intend[ed] to file a motion to compel individual arbitration with respect to any such individuals." *Id*. Again, however, Defendants did not file their Motion to Compel Arbitration.

Three-and-a-half months later, on March 7, 2022, the Court granted Plaintiff's Motion to Certify an Interlocutory Appeal. (ECF No. 71).

A year later, on March 24, 2023, the Court stayed this action pending the outcome of Plaintiff's interlocutory appeal. *See* Minute Entry, Mar. 25, 2023.

Another year later, on March 12, 2024, the Sixth Circuit vacated and remanded the Court's order granting Defendants' Motion for Partial Summary Judgment. (ECF No. 80).

On April 25, 2024, the Court held a telephone status conference. Minute Entry, Apr. 25, 2024. Thereafter, the Court ordered the parties to submit position papers regarding how they believed the case should be adjudicated in light of the Sixth Circuit's Opinion. *Id.* from the Sixth Circuit. (ECF No. 81).

On May 10, 2024, Defendants filed a 75-page submission regarding how they believed the rest of the case should proceed. (ECF No. 82). The submission did not mention arbitration at all. It did not mention Mr. Howell. Instead, Defendants' submission argued that all seven FLSA opt-ins, including Mr. Howell, "should submit to discovery as each individual must independently establish that he has a claim." *Id*. at PAGEID 928.

The Court held a second phone conference following the parties' submissions. Again, Defense counsel did not mention arbitration during the call, instead reiterating the position that the Defendants should be shielded from participating in precertification discovery while the Plaintiffs were subjected to targeted discovery aimed at the "threshold question as to whether the Named Plaintiff (and the handful of Opt-in Plaintiffs) suffered any injury whatsoever." *Id*.

In June 2024, Plaintiff moved to substitute Mr. Howell as the Named Plaintiff after Plaintiff's counsel had difficulty reaching Mr. Bradford. *See* Plaintiff's Motion to Substitute Named Plaintiff, Doc. 84. Defendants not only opposed this Motion, but also affirmatively moved to dismiss the case for lack of jurisdiction, claiming that there was no plaintiff litigating the case. *See* Defendants' Cross Motion to Dismiss for Lack of Jurisdiction, Doc. 87; Defendants' Opposition to Plaintiff's Motion to Substitute (ECF No. 88). But, again, Defendants did not raise any argument in either filing that Mr. Howell's claims should be compelled to arbitration. *Id*.[1]

Shortly thereafter, counsel for the parties met and conferred regarding briefing deadlines, during which, again, defense counsel did not raise the issue of arbitration. Joint Motion to Set Briefing Schedule on July 18, 2024(ECF No. 89).

---

[1] Later, Defendants attempted to claim that they "again raised the issue of Howell's arbitration agreement in the briefings in response to [the Motion to Substitute]." *See* ECF 117-1, PAGEID 1300. This contention is demonstrably false: Defendants **did not** raise the arbitration argument in either filing.

It was only after Plaintiffs filed their Opposition to Defendants' Motion to Dismiss, wherein Defendants learned that their attempt to derail the litigation and have all claims dismissed was a dead end (*i.e.* when their false accusation that Plaintiff's counsel had been litigating without a Named Plaintiff for years was debunked), that Defendants pulled the arbitration agreement from their back pocket and sought a "do over", asking the Court to permit them to amend and supplement their argument as to why Mr. Howell is not an appropriate representative (42 days after their Response was due). Defendants' Motion for Leave to Supplement and Amend (ECF 93); Defendants Reply in Support of Motion to Dismiss (ECF No. 94). As grounds for the need to amend, Defendants' counsel represented to the Court that Mr. Howell's arbitration agreement was discovered "[w]hile preparing Defendant's Reply in Support of its Motion to Dismiss." (ECF No. 93, PAGEID 1077). After Plaintiffs revealed the falsity of Defendants' "newly discovered evidence" claim in their Response in Opposition to Defendants' Motion to Leave to Amend and Supplement (ECF No. 95), Defense counsel admitted that the arbitration agreement was not, in fact, "newly discovered" as they had claimed. Defendants' Reply to Response in Opposition to Motion for Leave to Amend, fn. 2 (ECF No. 99).

In reality, Defendants made the decision to forego arbitration so long ago that they forgot about it.

## 2. Legal Standard

In examining a motion to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-HAUL Co. of Mass. &*

*Ohio, Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (quoting *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)).

There is no question that a party can waive its contractual right to arbitration, as arbitration agreements may be invalidated by generally applicable contract defenses. *Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318 (6th Cir. 1950); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, 142 S. Ct. 1708, 1713, 212 L. Ed. 2d 753, 760 (2022) ("the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules...If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it."). In *Morgan*, the Supreme Court affirmed that the correct test for waiver of the right to arbitrate is to consider whether a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id.* at 419.

To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right. *Id.* at 417. To determine if a party waives its contractual right to arbitration, the Court must determine whether it took actions that are completely inconsistent with any reliance on an arbitration agreement. *Schwebke v. United Wholesale Mortg., LLC*, No. 21-10154, 2023 U.S. Dist. LEXIS 91833, 2023 WL 3901482, at *4 (E.D. Mich. June 8, 2023).

**3.    Argument**

Defendants' arbitration agreement should be rejected for two distinct and independently sufficient reasons.

First, Defendants have had ample opportunity to compel Mr. Howell's claims to arbitration. Until now, they did not bother, seemingly because they believed it was to their advantage to keep his claims in federal court. Now that Mr. Howell wants to be the class

representative—not just an opt-in plaintiff—it suits Defendants, after three years of sitting on their rights, to try to kick him out of the case. This is textbook waiver.

Second, Defendants' arbitration agreement, by its own terms, no longer applies to Mr. Howell's claims. The Court determined long ago that Mr. Howell's claims may be brought in a collective action, so the agreement to arbitrate is void.

### 3.1. This Court, not an arbitrator, is tasked with deciding whether Defendants' waived arbitration.

Defendants' delegation argument can be disposed of quickly. Defendants argue that an arbitrator, not this Court, should decide "threshold arbitrability" questions. Defendants' Memorandum in Support of Cross Motion to Compel Arbitration. (ECF No. 117-1, PAGEID 1303-1305). While threshold arbitrability issues can be delegated to an arbitrator by "clear and unmistakable" evidence, the Sixth Circuit has expressly held that "the court, not the arbitrator, presumptively evaluates whether a Defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement." *Doe v. Piraino*, Case No. 3:22-cv-00560, 2024 U.S. Dist. LEXIS 60394, 2024 WL 1421253, at *10 (M.D. Tenn. Apr. 2, 2024) (quoting *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008)). As other district courts in the Sixth Circuit have explained, "this precedent makes clear which legal forum is responsible for deciding the question of waiver." *Doe v. Coliseum, Inc.*, No. 2:20-CV-10845-TGB-MJH, 2024 U.S. Dist. LEXIS 178910 (E.D. Mich. Sep. 30, 2024). Thus, this Court is the legal forum responsible for deciding the question of waiver.

**3.2. Defendants have waived their ability to compel arbitration of Mr. Howell's claims because their actions are completely inconsistent with reliance on arbitration.**

Congress enacted the FAA in 1925 in response to a perception that federal courts were unduly hostile toward arbitration. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018). While courts have historically held that the FAA "establishes 'a liberal federal policy favoring arbitration agreements,'" *id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)), more recent Supreme Court precedent made clear that arbitration agreements are "as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)). Thus, arbitration agreements "must be enforced as written," save upon such grounds as exist at law or in equity for the revocation of any contract. *Epic. Sys. Corp.*, 584 U.S. at 525; 9 U.S.C. § 2.

The savings clause of the FAA permits courts to invalidate an arbitration agreement "based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650, 142 S. Ct. 1906, 213 L. Ed. 2d 179 (2022) (internal quotations omitted) (quoting *Kindred Nursing Ctrs. L.P. v. Clark*, 581 U.S. 246, 251, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017)). "A court may not devise novel rules to favor arbitration over litigation. If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." *Morgan*, 142 S. Ct. 1708, 1713.

Prior to *Morgan*, federal courts, including the Sixth Circuit, had held that a party who extensively participates in litigation has not waived its right to arbitrate unless "its conduct has prejudiced the other side." After *Morgan*, however, the Sixth Circuit in *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 973 (6th Cir. 2024) determined the prejudice prong must be removed: courts need no longer require a showing that a party's delay caused prejudice before finding a waiver of the right to arbitrate. *See also*, *Doe v. Coliseum, Inc.*, 2024 U.S. Dist. LEXIS 178910 at *17. There are now only two elements to determine if a party waives its contractual right to arbitration: 1) if the party knew of the right; and 2) acted inconsistently with that right. *See, e.g., Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 292 (N.D. Cal. 2022) *(quoting* Morgan, 142 S. Ct. at 1709); *Schwebke v. United Wholesale Mortg., LLC*, No. 21-10154, 2023 U.S. Dist. LEXIS 91833, 2023 WL 3901482, at *4 (E.D. Mich. June 8, 2023). The waiver analysis rests on a totality of the circumstances—not on any bright-line rule. *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012).

Although the FAA does not define what constitutes a "default in proceeding with such arbitration," the Sixth Circuit "has implicitly treated the default element of § 3 as a party's waiver of its contractual right to arbitration, usually by its delay in seeking the enforcement of an arbitration agreement." *Cobble v. T-Mobile Sprint*, No. 3:21-CV-000415, 2024 U.S. Dist. LEXIS 51299, 2024 WL 1251339 at *7 (E.D. Ky. Mar. 22, 2024).

Courts consider a non-exhaustive list of factors in determining whether there has been a waiver of the right to arbitrate, including the degree of pretrial litigation, the length of delay before invoking arbitration, whether the parties have filed pretrial motions, whether the parties have litigated issues on the merits, and whether the parties have engaged in extensive discovery. *Jonna*

10

*v. Bitcoin Latinum*, No. 22-10208, 2024 U.S. Dist. LEXIS 107231, 2024 WL 3029505, at *8 (E.D. Mich. June 17, 2024). And, the more a party participates in the litigation before asserting the right to arbitrate, the more likely it is that the party waived its right. *Eaton v. Ascent Res.-Utica, LLC*, No. 2:19-cv-03412, 2024 U.S. Dist. LEXIS 62182, at *9 (S.D. Ohio Apr. 4, 2024).

Applying the totality-of-the-circumstances analysis, the Sixth Circuit has found waiver of the right to arbitrate in two cases involving significantly less delay than what is present here. In *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012), the panel found waiver where defendant (1) waited eight months before moving to compel arbitration; (2) did not raise arbitration as an affirmative defense; (3) asserted other affirmative defenses; (4) asserted a counterclaim; (5) participated in a case management conference; (6) participated in settlement discussions facilitated by a magistrate judge; (7) filed a case management order; (8) served interrogatories and requested documents; (9) noticed eight depositions; and (10) agreed to extend the discovery deadline. *Id.* at 715-16. The panel noted that regardless of whether each of the particular circumstances is insufficient to show that a party had acted completely inconsistently with its right to arbitration, they may well be sufficient when viewed collectively. *Id.* at 719.

Similarly, in *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971 (6th Cir. 2024), the circuit court found that the defendant had engaged in conduct similar to that of the defendant in *Johnson Assocs.* There, the defendant (1) waited seven months before moving to compel arbitration; (2) did not raise arbitration as an affirmative defense; (3) raised other affirmative defenses; (4) participated in a discovery conference; (5) filed a joint discovery plan; (6) served interrogatories and requested documents; (7) noticed two depositions; and (8) agreed to an extension of the discovery deadline.

11

Following *Johnson Assocs.* and *Schwebke*, a number of district courts within the Sixth Circuit have also found waiver in cases involving less litigation conduct and less delay than is present here. *See Doe v. Coliseum, Inc.*, No. 2:20-CV-10845-TGB-MJH, 2024 U.S. Dist. LEXIS 178910, at *19 (E.D. Mich. Sep. 30, 2024) (finding waiver where the defendant litigated for months, seeking extensions, filing responsive pleadings and briefings, participating in discovery and a case management conference, and requesting discovery deadline extensions); *Jonna v. Bitcoin Latinum*, No. 22-10208, 2024 U.S. Dist. LEXIS 107231, 2024 WL 3029505 (E.D. Mich. June 17, 2024) (finding waiver where the defendant acted inconsistently with the right to arbitrate by engaging in conduct for two years, including filing discovery motions, hearings, and conferences, which all required a substantial investment in court time and resources); *Doe v. Piraino*, No. 3:22-cv-00560, 2024 U.S. Dist. LEXIS 60394 (M.D. Tenn. Apr. 2, 2024) (finding waiver where the Defendant participated in settlement discussions for nearly a year without mentioning arbitration, filed a Motion to Dismiss on the merits and a Motion to Strike, participated in the preparation of a Case Management Order, and collaborated with plaintiff's counsel in trying to establish litigation deadlines).

When considering the totality of the circumstances here, it becomes clear that the Defendants have acted completely inconsistently with a right to arbitrate Mr. Howell's claims. Mr. Howell joined the case on November 19, 2020. The case was eventually stayed on March 24, 2023, pending the outcome of the Sixth Circuit's ruling on Plaintiff's appeal from the Court's grant of summary judgment in Defendants' favor. For two-and-a-half years, then, Defendants could have compelled Mr. Howell to arbitration but did not.

Then, after the Sixth Circuit's mandate, Defendants again could have moved to compel Mr. Howell to arbitration. Instead, they asked the Court to order that Mr. Howell complete merits discovery. Only *after* Plaintiff asked the Court to allow Mr. Howell to serve as a named plaintiff and putative class representative, *and after* Defendants' primary argument against that relief failed, did Defendants move to compel Mr. Howell to arbitration.

In the process, Defendants engaged in a number of actions inconsistent with their right to arbitrate. They:

- Asked the Court to set a schedule that contemplates merits discovery from all opt-ins, including Mr. Howell, once they join the case. (ECF No. 17, PAGEID 191-192);

- Participated in an attorney planning meeting and submitted a Second Rule 26(f) report, (ECF No. 67, PAGEID 863), wherein they stated they intended to move to compel Mr. Howell to arbitration, but did not;

- Participated in a Pretrial Scheduling Conference;

- Opposed Plaintiff's Motion to Certify an Interlocutory Appeal, arguing that discovery "must be conducted of Plaintiff and the handful of Opt-In Plaintiffs who joined the lawsuit. (ECF No. 66, PAGEID 775);

- Participated in an interlocutory appeal on an issue irrelevant to whether Mr. Howell has signed a valid arbitration agreement;

- Participated in two conferences with the Court, including conferences on April 25, 2024, May 23, 2024;

- Filed a Position Paper arguing that the Court should conduct mini-trials of the named plaintiff and each of the seven FLSA opt-in plaintiffs' claims (including Mr. Howell) to determine *on the merits* whether each has a claim. (ECF No. 82, PAGEID 928);

- Demanded that Plaintiff's counsel disclose each and every date that they communicated with Mr. Howell and the nature of such communications. (ECF No. 87-1, PAGEID 1037-38).

- Sought an extension of time to respond to Plaintiff's Motion to Substitute Named Plaintiff. (ECF No. 86);

- Filed an Opposition to Plaintiff's Motion to Substitute Mr. Howell as the Named Plaintiff, which did not raise the arbitration argument. (ECF No. 88);

- Filed a Motion to Dismiss the claims of Named Plaintiff and each of the FLSA opt-in plaintiffs, which did not raise the arbitration argument. (ECF No. 87);

- Served Objections and Responses to Plaintiff's Second Set of Requests for Production of Documents, which did not raise an objection regarding Mr. Howell's arbitration agreement and instead offered to meet and confer regarding "mutual document production and discovery with respect to the opt-ins and any other issues as reasonably informed by the Court's rulings [on Plaintiff's Motion to Substitute Named Plaintiff and Defendant's Cross-Motion to Dismiss] (attached hereto as "Exhibit A");

- Conferred with Plaintiff's counsel regarding briefing deadlines and filed a Joint Motion to Extend Briefing Schedule and Postpone Status Conference. (ECF No. 89);

- Filed a Motion for Leave to Supplement and Amend Brief in Opposition to Motion to Substitute, claiming that Mr. Howell's arbitration agreement was only recently discovered. (ECF No. 93, PAGEID 1077);

- Filed a Reply in Support of Motion to Dismiss, repeating the falsehood that Mr. Howell's arbitration agreement was discovered "while preparing this Reply." (ECF No. 94, PAGEID 1096);

- Filed a Reply in Response to Opposition to Motion for Leave to Supplement, admitting that the arbitration agreement was not, in fact, "newly discovered" but was instead "overlooked" in part "due to the passage of time." (ECF No. 99, PAGEID 1129);

- Filed a Response in Opposition to Plaintiff's Motion to Strike the arbitration argument, (ECF No. 100);

- Filed an Opposition to Plaintiff's Amended Motion to Substitute. Doc. 105.

Every one of these events occurred after Mr. Howell became an opt-in plaintiff but before Defendants filed a motion to compel arbitration. Defendants did not even produce a copy of Mr. Howell's purported arbitration agreement until after they discovered that their attempt to have the entire case dismissed was a dead end, which was nearly four years after Mr. Howell became a plaintiff. *See* Arbitration Agreement (ECF No. 94-3) (filed on August 16, 2024).

Defendants essentially argue that as long as a party raises arbitration as an affirmative defense, no finding of waiver can be made. Defendants' Motion (ECF No. 117-1, PAGEID 1309), citing *Johnson Assocs. Corp.*, 680 F.3d at 717. While it is true that raising arbitration as an affirmative defense is consistent with the right to arbitrate, doing so does not insulate a Defendant

from later waiving arbitration by acting inconsistent with the right thereafter. A party cannot say the word "arbitration" and then do nothing about it until it suits them.

The Court should not overlook the fact that Defendants acted completely inconsistent with the right to arbitrate by failing to even produce a copy of Mr. Howell's arbitration agreement and litigating this case for years simply because Defendants mentioned arbitration in their Answer. Further, Defendants' argument that the *only* delay was in not "immediately" raising arbitration in their Opposition to Plaintiff's first Motion to Substitute (filed over four years into this litigation) and excuse counsel's "oversight" due to an injury strains credulity. *See* Defendants' Motion (ECF No. 117-1, PAGEID 1312).

It should be plain to the Court that what is going on here. Defendants strategically chose not to attempt to compel Mr. Howell to arbitration because doing so would have created a second, expensive, single-plaintiff case in addition to this class/collective action. The arbitration would not have impacted the course of this case, so Defendants elected not to do so. Thus, Defendants, as was their right, waived arbitration against Mr. Howell and litigated this case for four years— including filing for summary judgment and defending an appeal on the case's merits. Only when Plaintiffs moved to substitute Mr. Howell did Defendants change their mind. It is far too late for Defendants to change course; the waiver doctrine is designed to prevent such games.

It is worth noting that Defendants' self-serving delay also eliminated any supposed benefit Mr. Howell would receive through the arbitration process. *See* 117-1, PAGEID 1327 (stating that arbitration reduces expenses and increases efficiency). If Defendants get their way, Mr. Howell will have had to wait over 3 years after joining the case to find out that Defendants want him to

start over, on an individual basis, in a different forum. Put another way, even though waiver does not require showing prejudice, there is substantial prejudice here.

The caselaw cited by Defendants as "similar" to the case at bar is helpful in that it provides a clear contrast between actions consistent with the right to arbitrate and Defendants' conduct. *Bryant* was a collective action case that had been pending for more than a year and a half but had not progressed past the complaint stage because the parties could not identify a named plaintiff who was not subject to an arbitration agreement. *Bryant v. Domino's Pizza,* No. 22-11319, 2024 U.S. Dist. LEXIS 69207, at *1 (E.D. Mich. Apr. 16, 2024). Though the parties spent months attempting to locate employment records for the putative named plaintiffs, the case was ultimately dismissed after the Defendant was able to demonstrate that each of the putative plaintiffs had signed an arbitration agreement either with the franchisee (which contractually covered the franchisor Defendants) or directly with the Defendant through an app provided by the franchisor to the franchisee. *Id.* at *5. In analyzing the plaintiff's waiver argument, the court found that the defendant had not waived arbitration based on the totality of circumstances in that specific course of litigation: the defendants put forth their arbitration defense in the first responsive pleading to a complaint, the Plaintiffs moved to amend the complaint, and the defendants asserted arbitration (futility) as a defense and provided the arbitration agreements in the very next document filed with the Court. *Id.* at *13.

This is a far cry from the case at bar, which involves nearly a four-year delay in producing the arbitration agreement and moving to compel Mr. Howell's claims to arbitration since he opted in as a plaintiff. Here, unlike the Defendants in *Bryant*, Defendants have significantly and strategically participated in this litigation for years, including participating in several conferences

17

with counsel and the Court, arguing for discovery from all opt-in plaintiffs (regardless of whether those individuals had signed arbitration agreements) both in May 2020 and May 2024, moving to dismiss Mr. Howell's claims for lack of subject matter jurisdiction, litigating the legal standard that should apply to the claims (including an appeal to the Sixth Circuit Court of Appeals), and opposing Plaintiffs' Motion to Substitute Mr. Howell as the named plaintiff without mentioning arbitration. *Supra*, pp. 13-15.

While Defendants may have made false promises about their intent to arbitrate, a statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver. *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Defendants abandoned the right to arbitrate long ago by actively participating in the litigation and seeking tactical advantages along the way. Though Defendants now seek to point the finger at Mr. Howell for "dilatoriness," Defendants failure to even produce a copy of Mr. Howell's arbitrator agreement until 1,447 days *after* Mr. Howell opted in to the case makes it abundantly clear where the fault lies. The totality of the circumstances here demonstrate that Defendants have waived arbitration.

### 3.3.    The arbitration agreement is void and null.

Even if the Defendants had not waived arbitration by their litigation conduct and delay, the arbitration agreement itself dictates that Mr. Howell's claims must remain before this Court.

Because arbitration agreements are "simply contracts," *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192, 218 L. Ed. 2d 615 (2024), courts are to "rigorously enforce the agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013); *Doe v. Coliseum, Inc.*, 2024 U.S. Dist. LEXIS 178910 at *7.

Here, the arbitration agreement specifies the scope of the arbitration agreement as specifically including "all claims, disputes, and controversies by the Team Member **or on the Team Member's behalf** against the Company and all claims, disputes, and controversies the Company may have against the Team Member, known as 'Covered Claims'". Arbitration Agreement, Sec. II. (ECF 117-1, PAGED 1320) (emphasis added). The Arbitration Agreement also includes a "poison pill" clause[2] that invalidates the agreement to arbitrate upon a court or arbitrator finding that a claim **may** proceed in a class or collective:

> **Form of Arbitration and Waiver of Multi-Plaintiff Litigation.** In any arbitration, any claim shall be arbitrated only on an individual basis and not on a class or private attorney general basis. The Team Member and the Company expressly waive any right to arbitrate as a class representative, as a class member, in a collective action, or in or pursuant to a private attorney general capacity, and there shall be no joinder or consolidation of parties. All arbitration shall be brought on a separate and individual basis. **In the event an arbitrator or court determines a claim may be brought as a class or in a collective action, then the agreement to arbitrate that claim is void and null and such class or collective action must be brought in the appropriate court system and not an arbitration.**

Arbitration Agreement, Sec. III.A. (ECF 117-1, PAGEID 1299) (emphasis added).

This Form of Arbitration and Waiver of Multi-Plaintiff Litigation clause is later specifically exempted from being severed from the agreement in the severability clause:

> Should any term or provision, or portion thereof, be declared void or unenforceable or deemed in contravention of law, it shall be severed and/or modified by the arbitrator or court and the remainder of the Arbitration Agreement shall be enforceable; **provided, however, that if the "Form of Arbitration" provision above prohibiting classwide, collective action, consolidated, or other group arbitration is deemed invalid, then this entire Arbitration Agreement shall be null and void as to that action and the parties encompassed,** except for Section V., Waiver of Jury Trial, which shall survive.

Arbitration Agreement, Sec. III.A. (ECF 117-1, PAGEID 1323-24) (emphasis added).

---

[2] *See, e.g.*, *Westmoreland v. Kindercare Education LLC* (2023) 90 Cal.App.5th 967, 972 [307 Cal. Rptr. 3d 554] (*Westmoreland*) (referring to a clause invalidating agreement upon unenforceability as "poison pill").

The poison pill clause, combined with the agreement's definition of claims (as including claims that someone else brings on Mr. Howell's behalf), means that, when the Court held that Mr. Bradford can bring the claims collectively, the agreement became "void and null."[3] The clause unambiguously and without limitation dictates that if a determination is made that a claim may be brought as a class or in a collective action, then the agreement to arbitrate that claim is void and null.

Mr. Bradford brought this case both individually and on behalf of those similarly situated pursuant to the collective action mechanism created by the FLSA. *See* Complaint, Doc. 1; 29 U.S.C. 216(b). The FLSA expressly authorizes one employee to bring claims on behalf of others. 29 U.S.C. 216(b).

Thereafter, this Court determined that the claims he raised both individually and on behalf of those similarly situated may be brought in a collective action. *See* Order granting Plaintiff's Motion to Conditionally Certify a FLSA Collective Action and to Authorize Notice (ECF No. 32). Upon receiving Court-facilitated Notice of the Opportunity to Join, Mr. Howell consented to join the Collective Action and designated the Named Plaintiff to make all decisions on his behalf. (ECF No. 40-1).

In other words, the claims in this case—brought on Mr. Howell's behalf—are claims that the Court has determined "may be brought in a collective action." Under the poison pill clause of the Arbitration Agreement, the Court's determination that the claims asserted on behalf of Mr. Howell may be brought in a collective action voided the agreement to arbitrate and mandated that the claim be brought in this Court. And, though there is no room to doubt the unambiguous

---

[3] The language excluding from arbitration class and collective action claims makes it clear that the arbitration agreement has nothing to do with arbitration but, instead, is merely a vehicle to eliminate exposure to class claims.

language of the agreement, the severability clause bolsters the intention of the parties to nullify the entire arbitration agreement in the event that a court or arbitrator determined that the claims could proceed on a class or collective basis.

In *McArdle v. AT&T Mobility LLC*, a court considered a similar poison pill clause in an arbitration agreement. *McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW, 2017 U.S. Dist. LEXIS 162751, at *13 (N.D. Cal. Oct. 2, 2017). There, the arbitration agreement's poison pill clause stated "if this specific provision is found to be unenforceable, then the entirety of the arbitration provision shall be null and void." *Id.* at *11. After determining that the specific provision was unenforceable, the court analyzed the language of the contract to determine whether the poison pill clause voided the entire agreement to arbitrate. Based on the plain language of the agreement, the court determined that the clause was unambiguous and that there was no room for doubt that the poison pill clause was triggered and the entire agreement to arbitrate was void and null. *Id.* at *14. Like the provision in *McArdle*, the arbitration agreement provision here declares the entire arbitration provision null and void upon a triggering event (here, a court deciding that a claim by the Team Member or on the Team Member's behalf may be brought in a collective action.) *Compare, e.g. Stout v. GrubHub Inc.*, No. 21-cv-04745-EMC, 2021 U.S. Dist. LEXIS 232378, at *30 (N.D. Cal. Dec. 3, 2021) (concluding that there was no complete poison pill in the contract where the agreement contained a "Survival and Severability of Terms" clause that stated that if any part of the arbitration provision is deemed invalid or enforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim.")

Defendants argue that the Sixth Circuit's decision in *Clark v. A & L Homecare and Training Center, LLC*, 68 F.4th 1003, 2023 U.S. App. LEXIS 12365, 2023 WL 3559657 (6th Cir. May 19,

2023) regarding the standard for sending notice pursuant to 29 U.S.C. § 216(b) somehow precludes the arbitration's nullification provision from taking effect. They latch onto the Sixth Circuit's explanation that a decision to authorize FLSA collective action notice does not amount to a "certification" of any class. Defendants' Motion (ECF 117-1, PAGEID 1307-1308). Because "conditional certification" is a misnomer, the argument goes, the Court's decision in this case conditionally certifying the case as an FLSA collective action does not amount to the Court "determine[ing] a claim may be brought…in a collective action." *Id.*; Arbitration Agreement, Sec. III.A. (ECF No. 117-1, PAGEID 1299).

Defendants' argument is easily disposed of because it relies upon the Court adding words to the contract. Specifically, Defendants wish the Court to add words like "final" to modify "certification." No such language appears in the contract language: "In the event an arbitrator or court determines a claim may be brought as a class or in a collective action, then the agreement to arbitrate that claim is void and null and such class or collective action must be brought in the appropriate court system and not an arbitration." Arbitration Agreement, Sec. III.A. (ECF 117-1, PAGEID 1299).

According to this language, the moment a court or arbitrator "determines a claim may be brought as a class or in a collective action," the agreement is rendered void. This is true even if a court is incorrect in making the determination or if, at a later point, the court decertifies the class or court of appeals reverses the determination. It does not matter of the determination is subject to later review or is in any other way "conditional" because the contract language is triggered by any determination that a claim may be brought in a collective action. Nowhere in the contract does it condition the determination on being a final, unappealable, unchangeable, determination.

22

Nor does it matter that the Sixth Circuit held that conditional certification does not change the nature of the case. *Clark* at 1009. Clearly, the arbitration agreement's drafters believe that such a determination changed the nature of the case enough for them to nullify the arbitration agreement. With regard to the contract, the drafter's opinion on the nature of the case is what matters.

Finally, *Clark*'s holding that "conditional certification" is a misnomer does not impact interpreting the contract. Contracts are interpreted according to the legal framework that existed at the time the contract was signed. *Ohio, Pa. & W. Va. Coal Co. v. Panenergy Corp.*, 120 F.3d 607, 611 (6th Cir. 1997). Undoubtedly, at the time the contract was signed, courts "conditionally certified" FLSA actions, including in this case. *See* Doc. 20, 32; *see also Bailey v. Six Slice Acquisitions, LLC*, Case No. 1:20-cv-00432, Opinion & Order, FN 1 (S.D. Ohio Nov. 30, 2020).

As Defendants recognize, the Supreme Court has instructed courts to "rigorously enforce arbitration agreements according to their terms." *Id*. at PAGEID 1306 citing *Am. Express Corp. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Like the court in *McArdle*, the Court should reject Defendants' invitation to read in limiting language that does not exists, such as adding in the words "by granting final certification of a collective action or class certification." Here, the arbitration nullification provision does not mention "certification," whether conditional, final, or otherwise, or indicate that a court must decide that the asserted claim can proceed to a decision as a collective action. Instead, it simply requires a finding that a claim *may* be brought as a class or in a collective action, which happened when this case was conditionally certified. As a result, *Clark*'s note about the semantics used in FLSA collective actions is irrelevant.

4.      **Conclusion**

Defendants should not be permitted to compel Mr. Howell's claims to arbitration only now that it no longer suits them to litigate his claims before this Court. Defendants have invoked the litigation machinery and participated extensively in litigation in the four years since this case was certified as a FLSA collective action and Mr. Howell became a plaintiff, all without ever compelling Mr. Howell's claims to arbitration.

Defendants cannot sleep on the right to arbitrate, keeping it like a card in their back pocket and only pulling it out when it is ready for a do over. And, even if Defendants' conduct did not rise to the level of waiver (it does), the arbitration agreement foisted upon Mr. Howell itself dictates that his claims must remain in this forum. Plaintiff respectfully requests that the Court deny Defendants' Motion.

Respectfully submitted,

*/s/ Emily Hubbard*
Andrew R. Biller
Andrew P. Kimble
Emily Hubbard
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for Plaintiff and the putative class*

24