IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

Michael Bradford,

    *On behalf of himself and those similarly situated*,

        Plaintiff,

      v.

Team Pizza, Inc., *et al*

        Defendants.

Case No. 1:20-cv-60

Judge Michael R. Barrett

Magistrate Judge Karen L. Litkovitz

---

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT

---

## I.    INTRODUCTION

Plaintiffs Michael Bradford, Donna Uhler, and William Howell (collectively "Plaintiffs"), on behalf of themselves, the FLSA opt-in plaintiffs, and the putative classes of delivery drivers, have reached a settlement agreement with Defendants Team Pizza, Inc. and Chris Short (collectively "Defendants"). The parties now seek approval of their settlement. Plaintiff asks the Court to preliminarily approve the Settlement Agreement (attached hereto as "Exhibit 1"), authorize the proposed Notice to be disseminated, and schedule a fairness hearing for approximately 100 days after preliminary approval.

## II.     Background

### a.     Procedural History

Plaintiffs worked as pizza delivery drivers at one of the Defendants' Domino's Pizza locations. Bradford filed this lawsuit on January 24, 2020 against the Defendants. *See* Doc. 1. He alleged that the Defendants require their pizza delivery drivers to provide cars to use at work, but do not adequately reimburse the drivers for the vehicle costs they incur in furtherance of company business. *Id.* He further alleged that this under-reimbursement results in a minimum wage violation. *Id.*

On October 9, 2020, the Court authorized FLSA notice to similarly-situated employees who worked at the same location as Plaintiff Bradford. *See* Order on Plaintiffs' Motion for Conditional Certification (Doc. 32). Seven drivers joined the case.

Shortly thereafter, the parties submitted cross-motions for summary judgment regarding how to value vehicle expenses for purposes of adjudicating an FLSA claim. *See* Motions for Partial Summary Judgment (Docs. 30, 31). On May 26, 2021, the Court adopted the Magistrate Judge's Report & Recommendation granting Defendants' Motion for Summary Judgment, holding that employers such as Defendants were permitted to reasonably approximate their delivery drivers' vehicle expenses. (Doc. 61). On October 29, 2021, Plaintiffs moved for an interlocutory appeal of the Summary Judgment Order (Doc. 64), which the Court granted (Doc. 71). At the Sixth Circuit, this case was combined with another case, *Parker v. Battle Creek Pizza, Inc.*, which had reached a different conclusion on the same legal quesiton. *Parker v. Battle Creek Pizza, Inc.*, 600 F. Supp. 3d 809 (W.D. Mich. 2022)..

On March 12, 2024, the Sixth Circuit vacated the district court's decision in this matter and the Parker matter on consolidated appeals and remanded the matter for further proceedings. *Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009, 1016 (6th Cir. 2024).

On remand, the Court instructed the parties to file simultaneous position papers regarding the scope of discovery and trajectory of the case. (Minute Entry, Apr. 25, 2024); Defendants' Position Paper (Doc. 82); Plaintiff's Position Paper (Doc. 83). Following submission of the parties' position papers, the Court held a second phone conference and instructed counsel for the parties to work towards exploring a resolution of the claims raised through settlement, though the Defendants were permitted to seek discovery from the named plaintiff in the meantime.

What followed was a flurry of legal briefing. First, because Plaintiff's counsel was not immediately able to reach Mr. Bradford, they moved to substitute opt-in Plaintiff William Howell as the named plaintiff. (Doc. 84). Defendants' filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 87), as well as an opposition to Plaintiff's Motion to Substitute. (Doc. 88). While that briefing was pending, Mr. Bradford was able to communicate with his counsel again but was still willing to step aside as the named plaintiff. (Docs. 91, 91-1). In response, Defendants sought leave to supplement their brief in opposition to Plaintiff's Motion to Substitute to raise an arbitration defense. (Doc. 93). Plaintiffs responded by moving to strike Defendants' argument regarding the arbitration agreement. (Doc. 96).

The Court held a conference on October 11, 2024. After the conference, Plaintiff moved to file an amended motion to substitute named plaintiff to add Plaintiff Donna Uhler as a named plaintiff in addition to Mr. Howell and in place of Mr. Bradford. (Doc. 103). Defendants filed an opposition (Doc. 103) as well as a Cross-Motion to Compel Arbitration. (Doc. 105). Shortly

thereafter, Mr. Bradford informed the Court that he was willing and able to proceed as the class representative. On November 26, 2024, Plaintiffs filed an Expedited Motion to Amend Plaintiffs' Motion to Substitute to add Mr. Howell and Ms. Uhler in addition, rather than in place of, Mr. Bradford. (Doc. 110).

The Court held another conference and informed the parties that it would allow the Plaintiffs to add Mr. Howell and Ms. Uhler as named plaintiffs in addition to Mr. Bradford, and instructed the parties to commence discovery. (Minute Entry, Dec. 16, 2024). Defendants then filed a Renewed Motion to Compel Arbitration for William Howell (Doc. 117), which Plaintiffs' opposed. (Doc. 119). Meanwhile, the parties commenced discovery. Following that initial exchange, Plaintiff filed a Motion for Leave to File Amended Complaint. (Doc. 122).Defendants both opposed Plaintiff's Motion and moved to strike the class allegations as to the arbitration employees (Doc. 123). On May 21, 2025, the Court granted Plaintiffs' motion for leave to file a first amended complaint and denied Defendants' Motion to Compel Arbitration. (Doc. 130). Plaintiffs filed their First Amended Complaint the following day. (Doc. 132).

On May 26, 2025, Plaintiffs filed a combined motion for Rule 23 class certification and renewed motion for FLSA conditional certification (Doc. 133). The parties also raised discovery disputes regarding the scope of discovery and filed position statements outlining their respecitve arguments. (Docs. 138, 139, 140).

On July 11, 2025, the parties notified the Court that they had agreed to attend a mediation with private mediator Gerome P. Weiss, and the case was stayed pending the mediation. Order (Doc. 145). Ultimately, the parties were able to resolve the calims asserted in the lawsuit, and jointly notified the Court of the settlement in principle on November 11, 2025. *See* Joint Notice of

Settlement (Doc. 147). The parties have now reduced their agreement to a formal Settlement Agreement, attached hereto as "Exhibit 1"[1]).

### b. Plaintiff's Claims

Plaintiff's Complaint alleges that Defendants' delivery driver employment and compensation policies run afoul of the Fair Labor Standards Act and state wage and hour laws. *See* First Amended Complaint (Doc. 132). Specifically, Plaintiffs allege that drivers are required to provide cars to make deliveries, but are not sufficiently reimbursed for the vehicle expenses they incur in the process. Plaintiffs allege that the drivers are paid at or close to minimum wage, so an under-reimbursement for vehicle expenses could result in a violation of state and federal minimum wage laws. Plaintiffs seek unpaid wages plus an equal amount as liquidated damages under the FLSA and state wage laws. *See id.*, ¶¶ 183, 197, 212, 219. In addition, Plaintiffs allege this arrangement violates Ohio and Kentucky laws, including laws requiring timely payment of wages and gives rise to a claim for common law unjust enrichment. *Id.* at ¶¶ 185-223. The Defendants deny the allegations that their pay practices violate the law and contend that they have properly reimbursed the drivers for their vehicle expenses in making deliveries.

This court has ruled that the cost of the cars act as deductions from an employee's wages. *See* Report & Recommendation, Doc. 53 at PageID 630 ("the parties do not dispute that the cost associated with delivering food for an employer is considered a 'kickback' that must be fully reimbursed by the employer."). Thus, employers must pay drivers minimum wage "to the penny" taking into account any vehicle expenses. *Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009, 1016

---

[1] The Settlement Agreement attached as Exhibit 1 does not contain the parties' signatures. Plaintiffs will provide a fully-executed copy with their Motion for Final Approval or as directed by the Court.

(6th Cir. 2024). Plaintiff contends that because Defendants did not collect records of and reimburse for the delivery drivers' actual vehicle expenses, the drivers may prove their damages as a matter of just and reasonable inference. *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Defendants, by contrast, contend that the each employee bears the burden of proving that their individual costs exceeded Defendants' reimbursement. *See, e.g*, Defendants' Position Paper (Doc. 82).

If Plaintiff's position prevailed, Plaintiff alleges the underpayment would arguably trigger a number of wage-related claims, including state and federal minimum wage claims, Ohio and Kentucky timely payment of wage law claims, and common law unjust enrichment claims. Based on Plaintiff's estimates using the IRS standard business mileage rate for each year of the relevant time frame, Plaintiff alleges that the delivery drivers were under-reimbursed by approximately $708,000.

Defendants raised a number of defenses that, if accepted by the Court, would have reduced the drivers' claims substantially, potentially all the way to zero. For example, the Defendants argued that the Plaintiffs are not "similarly situated" to one another and, therefore, could not proceed in a collective action. *See* Defendants' Position Paper (Doc. 139). Defendants also took the position that class certification was not appropriate in the wake of *Parker* because, they contend, *Parker* requires that each driver must be reimbursed for his or her unique, individual expenses. While Plaintiff disagrees, only one district court has addressed this question since *Parker* issued. *See Dietrich v. Romeo's Pizza, Inc.,* No. 1:19 CV 2092, 2025 U.S. Dist. LEXIS 168657 (N.D. Ohio Aug. 29, 2025) (granting Rule 23 class certification post-*Parker*).

Thus, if Defendants' position prevailed, Defendants could potentially preclude certain employees from participating in the case or from recovering due to a lack of documented vehicle expenses. In this situation, the drivers' alleged unpaid wages range from $0 up to approximately $708,000.

### c.    Summary of Settlement Terms

The parties ultimately agreed to settle the claims asserted on behalf of the following class:

Delivery drivers who did not sign an arbitration agreement employed by Defendants in Ohio between the dates of January 24, 2017 (or when Defendant acquired the store in which the Ohio delivery driver worked, if after that date) and December 31, 2019 and in Kentucky from January 24, 2015 (or when Defendant acquired the store in which the Kentucky delivery driver worked, if after that date) to December 31, 2019.

The settlement provides a total sum of $590,000.00 to be allocated to class members claims, minus service awards, advanced litigation costs, and settlement administration costs. In addition, the settlement provides $590,000.00 for attorneys' fees. A number of settlement terms are notable.

First, the settlement covers only the claims asserted on behalf of delivery drivers employed until December 31, 2019 because the Defendants changed their reimbursement policy to begin reimbursing drivers at the IRS standard business mileage rate as of January 1, 2020. *See* Ex. 1, ¶1.B, ¶3..

Second, the settlement provides class members with roughly 75% of their alleged unpaid wages. Considering the risks of going forward, this is an excellent result.

Third, it is an "opt-out" settlement, meaning all class members will receive a check without having to take any action. *Id*. at ¶6.C.

Fourth, class members' settlement share will be determined based on their proportionate share of the miles driven by the members of the class during the relevant time period. Individuals

who opted in for their FLSA claims before the settlement was reached will have their miles counted at 1.1× to account for the fact that they have preserved more of their claims than those who did not opt in. *Id.* at ¶4(D)(2). Drivers who worked in Ohio will have their miles multiplied by 1.5× to account for treble damages permitted under Ohio wage law. *Id.*

Fifth, the release is narrowly tailored. The release is limited to claims arising from the facts asserted in Plaintiff's Complaint. *Id.* at ¶6.

Finally, any class member who does not opt in and does not cash their check does not release their FLSA claims and is free to assert them elsewhere if they choose. *Id.* at ¶6.

## III. The Court should preliminarily approve the parties' Settlement Agreement.

Rule 23 class actions can only be settled with Court approval and after notice to the class. Fed. R. Civ. P. 23(e).

Courts overseeing Rule 23 class action settlements follow a three-step process. First, the Court determines whether to preliminarily approve the settlement. "The parties must provide the Court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Rule 23(e)(1)(A). To do this, the parties must show the Court will likely be able to approve the proposal pursuant to Rule 23(e)(2) and will be able to certify the class. Rule 23(e)(1)(B).

Second, if the parties meet these requirements, the Court "must direct notice in a reasonable manner to all class members who would be bound[.]" Rule 23(e)(1)(A).

Third, after the notice period, and after a hearing, the Court may approve the settlement considering the various factors in Rule 23(e)(2).

8

Thus, to determine whether to grant preliminary approval, the Court must decide whether it will likely be able to grant class certification and whether it will likely be able to approve the settlement.

### a. The Court should certify the Rule 23 Class for Settlement Purposes

As part of the settlement, the parties agree to certification, for settlement purposes, of the FLSA collective class and the Rule 23 class covering delivery drivers who worked for Defendants in Ohio and Kentucky during the relevant time frames.

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions are especially appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiff asks the Court to certify the following hybrid class/collective:

> All former delivery driver employees employed at one or more of the Defendants' Domino's Pizza stores in Ohio between the dates of January 24, 2017 or when Defendant acquired the store in which the Ohio delivery driver worked and December 31, 2019 who did not sign an arbitration agreement and in Kentucky from January 24, 2015 or when Defendant acquired the store in which the Kentucky delivery driver worked to December 31, 2019 who did not sign an arbitration agreement.

Defendants consent to certification of the above class for settlement purposes only. In doing so, Defendants do not waive any arguments they have opposing class/collective action certification, should the Court decline to approve the settlement.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As described below, all the requirements for class certification are met.

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Ohio and Kentucky laws do not contain such a requirement. *See* Ohio Const. Art. II, Sec. 34a, O.R.C. §4113.15, O.R.C., KRS § 337.275, KRS § 337.020. Consequently, plaintiffs may maintain class actions for alleged unpaid wages under Ohio and Kentucky law pursuant to Fed. Civ. R. 23. *See, e.g.*, *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 5 2018) (certifying Rule 23 class of delivery drivers under Ohio wage law); *Edwards v. PJ Ops Idaho, LLC*, 2022 U.S. Dist. LEXIS 102861 (D. Idaho June 7, 2022) (certifying Rule 23 class of delivery drivers under Kentucky wage law).

1. **Plaintiffs have satisfied the four Rule 23(a) prerequisites for class certification.**

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement each of these requirements is satisfied here.

A. **Numerosity**

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. The Sixth Circuit has explained that "[w]hile no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Dietrich v. Romeo's Pizza, Inc.*, No. 1:19 CV 2092, 2025 LX 326490, at *10 (N.D. Ohio Aug. 29, 2025) (citation omitted). "Often, a class of 40 or more members is sufficient to meet the numerosity requirement." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014).

Here, the class contains hundreds of delivery drivers employed by Defendants in Ohio and Kentucky during the relevant time period. This easily meets the numerosity requirement.

### B. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." To meet the commonality requirement, class members' claims must "depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012).

Here, Plaintiff maintains that the legal theories and relevant facts are common to the class because the class consists of workers that were allegedly harmed in the same way. Plaintiff has identified the following common questions of law or fact presented by his claims: (1) how much Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) what legal standard applies to this situation, and (4) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Outside of the settlement context—*i.e.*, when an employer disputed class certification—courts have found that class certification is appropriate for nearly identical claims. *See, e.g., Waters v. Pizza to You, LLC*, 2021 U.S. Dist. LEXIS 11743, at *27 (S.D. Ohio Jan. 22, 2021).

### C. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typicality is met when the named plaintiff's interests are "aligned with those

of the represented group, and in pursuing his own claims, [he] will also advance the interests of the class members." *Young*, 693 F.3d at 542. The Sixth Circuit has also explained that the commonality and typicality requirements "tend to merge" because both serve as guideposts for determining whether the interests of the class members will be fairly and adequately protected in their absence. *Mays v. LaRose*, 951 F.3d 775, 793 (6th Cir. 2020).

Here, Plaintiffs' claims are typical of all class members' claims in that they all arise from the same courses of conduct. As the *Dietrich* court explained, the individualized nature of each delivery driver's claim does not destroy typicality, as "typical does not mean identical, and the typicality requirement is liberally construed." *Dietrich*, 2025 LEXIS 326490, at *19 (N.D. Ohio Aug. 29, 2025) (citation omitted). Whether Defendants' pay practices are illegal is a question answerable on a class-wide basis. If Defendants' wage and hour practices violate Ohio and Kentucky law as to Plaintiffs, they violate Ohio and Kentucky law as to the putative class members; and, accordingly, the typicality requirement is met here. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878, at *13 (S.D. Ohio Nov. 5, 2018) (finding typicality requirement met in pizza delivery driver under-reimbursement case).

**D.    Adequacy of Representatives**

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. The Sixth Circuit utilizes a two-pronged test for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

Plaintiff and his counsel have prosecuted this action competently and vigorously. Plaintiff set out to recover lost wages for as many of his co-workers as possible and has expended considerable time to accomplish that goal. Plaintiff's claims are the same as the claims of his co-workers, such that his goals and the goals of the class are aligned.

Likewise, Plaintiff's counsel has committed, and will continue to commit, the resources necessary to properly represent the putative class in this case. Plaintiff's counsel Biller & Kimble, LLC has "proven themselves to be highly skilled advocates for pizza delivery drivers and other workers." *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 97576, at *21 (S.D. Ohio May 24, 2021).

This case is one of many "delivery driver lawsuits" that Plaintiff's counsel is litigating across the nation. Counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification.[2] Thus, Plaintiff's counsel is well-versed in this area of law and the strengths and weaknesses of the claims at issue. The adequacy requirement is met here.

**2. Plaintiff has satisfied the Rule 23(b)(3) class certification requirements.**

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify

---

[2] *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 50403 (S.D. Ohio Mar. 26, 2019) (motion to dismiss); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790, at *8 (S.D. Ohio Nov. 5, 2019) (motion for summary judgment); *Parker v. Battle Creek Pizza,* 600 F.Supp.3d 809, 814 (W.D. Mich. 2022) (motion for summary judgment); *Waters,* 538 F. Supp. 3d at 800 (motion for summary judgment); *Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 U.S. Dist. LEXIS 171728 (S.D. Ohio Sept. 29 2019) (contested motion for conditional certification); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 U.S. Dist. LEXIS 161623 (S.D. Ohio Sept. 23, 2019) (motion to dismiss); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 6, 2018) (contested motion for class certification); *Dietrich,* 2025 U.S. Dist. LEXIS 168657 (granting class certification post-*Parker*).

class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

### A. Common questions of law and fact predominate.

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544.

There are numerous common questions of law and fact arising out of Defendants' conduct, compared to few individual questions, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement is for the delivery drivers and whether Defendants reimbursed that amount. These issues would be determined based on common proof. As a result, common questions predominate.

### B. A class action is the superior method for adjudicating these claims.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an

economical way. *See, e.g., Tedrow v. Cowles*, No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers.").

Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Ohio or Kentucky or asserting claims on behalf of Ohio or Kentucky drivers. A final resolution of Defendants' liability as to the Ohio and Kentucky classes is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id*. (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

Numerous federal courts faced with contested motions for Rule 23 class certification in pizza delivery driver under-reimbursement cases have granted certification.[3] Here, class action certification for purposes of settlement is not contested.

> **b.  The Court should preliminarily approve the settlement as fair, reasonable, and adequate.**

---

[3] *See Branning v. Romeo's Pizza, Inc.,* No. 1:19 CV 2092, 2022 U.S. Dist. LEXIS 59262, at *7 (N.D. Ohio Mar. 29, 2022); *Edwards v. PJ OPS Idaho, LLC*, No. 1:17-cv-00283-DCN, 2022 U.S. Dist. LEXIS 102861, at *23 (D. Id. June 7, 2022); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 11743, at *27 (S.D. Ohio Jan. 22, 2021); *Patzfahl v. FSM Za, LLC*, No. 20-cv-1202, 2022 U.S. Dist. LEXIS 230073, at *13-14 (E.D. Wis. Dec. 19, 2022); *Brandenburg v. Cousin Vinny's*, 2018 WL 5800594, 2018 U.S. Dist. LEXIS 189878, at *20 (S.D. Ohio Nov. 5, 2018); *McFarlin v. The Word Enterprises, LLC*, No. 16-cv-12536, 2017 WL 4416451, 2017 U.S. Dist. LEXIS 164968, at *13 (E.D. Mich. Oct. 5, 2017); *Bass v. PJCOMN Acq. Corp.*, No. 09-cv-01614, 2011 WL 2149873, 2011 U.S. Dist. LEXIS 58352, at *18 (D. Colo. Jun. 1, 2011); *Perrin v. Papa John's Int'l, Inc.,* 2013 WL 6885334, 2013 U.S. Dist. LEXIS 181749, at *26 (E.D. Mo. Dec. 31, 2013); *Dietrich*, 2025 U.S. Dist. LEXIS 168657.

Rule 23(e)(2) provides the considerations for class settlement approval. For the Court to grant preliminary approval, it must be satisfied that it will "likely be able to" find that the settlement is "fair, reasonable and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). The parties' settlement satisfies these requirements.

*Rule 23(e)(2)(A)*. First, as discussed above, the class representative and class counsel have adequately represented the class.

*Rule 23(e)(2)(B)*. Second, the settlement was negotiated at arm's length. The parties have been engaged in contested litigation for over five years, including an appeal to the Sixth Circuit. The settlement was reached with the help of a private mediator, Gerome Weiss. This factor supports approval of the settlement.

*Rule 23(e)(2)(C)*. Third, the relief provided to the class is adequate. The settlement provides the drivers with nearly 83.3% of their alleged unpaid wages, if those wages were calculated making every assumption in the drivers' favor. This is a great result. *See, e.g.*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair

and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing Inc.*, 2010 U.S. Dist. LEXIS 20446, *20 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average.").

As discussed above, Defendants planned to raise multiple defenses. If they prevailed on any one or more of a number of issues (e.g., the effect of *Parker*, the adequacy of the rate paid, and/or the appropriateness of class certification), the drivers' potential damages would have shrunk significantly.

*Rule 23(e)(2)(C)(i)*. Addressing the specific factors listed in subsection (e)(2)(C), the costs, risks, and delay of trial and appeal would have been substantial. *See, e.g., Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018) (noting that "wage and hour class and collective actions… are inherently complex and time-consuming"). First, the case almost certainly would have required expensive vehicle-costing experts to testify for both sides, and likely other consultants to assist with analyzing the huge amounts of data at issue. It also would have required costly discovery related to company communications and employer liability, as the individual defendants denied that they were liable for the violations alleged. Second, as noted throughout this brief, there were a number of legal and factual issues that, if they were decided or came out against the drivers, would have reduced the value of their claims significantly. Finally, the case settled on the eve of class certification briefing. No summary judgment deadline had been set. In other words, even after five years, the case was still years away from a trial. Thus, the costs, risks, and delays here support approval of the settlement.

*Rule 23(e)(2)(C)(ii)*. The method for distributing relief to the class is the most optimal possible method—class members will receive a check in the mail without having to do anything at all. The costs for this settlement administration (approximately $11,500) will be deducted from the settlement before shares are calculated. This is an effective method for distribution and this factor supports approval of the settlement.

*Rule 23(e)(2)(C)(iii)*. The terms of the proposed attorneys' fees, including the timing of payment, are likewise reasonable. The Settlement Agreement provides that the class's claim for attorneys' fees and costs are resolved in exchange for $590,000 in addition to the class award. Plaintiffs' counsel has expended 1,443.29 hours on the case for a lodestar of $1,088,711.32. They have incurred $14,866.64 in advanced litigation costs. Thus, the agreed attorneys' fees and costs represent 51% of counsel's lodestar on the case.

In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 761 (S.D. Ohio 2007). Courts have discretion "to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir. 1993). Here, there are a number of compelling reasons to utilize the lodestar approach.

First, the lodestar method is appropriate under the circumstances of the case because it better accounts for the amount of work performed by Plaintiffs' counsel in this case. *Id.* at 516 ("The lodestar method better accounts for the amount of work done…"). The settlement was achieved only after extensive work by class counsel. As the Court is aware, the case has been pending for over five years and involved a consolidated appeal to the Sixth Circuit to determine a

central issue to the litigation. Because Plaintiffs' counsel has expended substantial time and resources over several years, all while fronting costs and labor with no guarantee of recovery, this approach ensures that Plaintiffs' attorneys are fairly compensated for their efforts considering the time and labor required, the complexity of the case, and the results achieved.

Second, the plaintiffs' damages are relatively small, compared to the costs required to litigate them, but they have suffered damages nonetheless. In such a circumstance, counsel is often required to expend substantial attorney time—sometimes accruing fees much greater than the value of the case—in order to help workers recover their wages. Is it essential to the proper functioning of the FLSA and associated state laws that lawyers who undertake these cases be compensated for these important efforts. This situation—where the attorneys' fees accrued exceed the unpaid wages alleged—is the type of "compelling circumstance" that augers in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, n. 1, (S.D. Ohio Nov. 5, 2020); *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir. 2021) (reversing and remanding fee award limited to a percentage of recovery in wage case). As the Sixth Circuit explained in *Rembert*, "[t]he very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims…would be unable to 'attract competent counsel' to represent them." *Id.* at 616 (citation omitted).

Here, Plaintiffs negotiated an attorney fee amount that is significantly less than their lodestar. As more detailed below, Plaintiffs' counsel spent significant time working on the case. Counsel's hours and billing rates are summarized here[4]:

| Attorney | Current Billing Rate | Hours | Total |
|---|---|---|---|
| Andrew R. Biller | $700 | 172.5 | $106,460.00 |
| Andrew P. Kimble | $700 | 66.48 | $36,959.50 |
| Emily A. Hubbard | $550 | 368.6 | $195,747.5 |
| Laura E. Farmwald | $550 | 6 | $3,025.00 |
| Matthew Wessler | $1,400 | 279.25 | $390,950.00 |
| Eric Citron | $1,300 | 2 | $2,600.00 |
| Gregory A. Beck | $1,300 | 2 | $2,600.00 |
| Linnet Davis-Stermitz | $900 | 253.4 | $228,060.00 |
| Jessica Garland | $800 | 72.857 | $58,286.32 |
| Former BK attorneys and staff | $150-$550 | 217.2 | $59,123.00 |
| Gupta Wessler staff | $350 | 14 | $4,900.00 |
| Total | | 1,454.287 | $1,088,711.32 |

The hourly rates used by Plaintiffs' counsel are reasonable in light of their skills and experience. *See* Declaration of Emily Hubbard (attached hereto as "Exhibit 2"); *McGrothers v. GT*

---

[4] The time presented does not include email time, which is often substantial, but has been discounted to zero here because the fee requested is roughly half the time billed. *See* Ex. 2, ¶ 17.

*Pizza, Inc.*, No. 2:20-cv-4050, 2022 U.S. Dist. LEXIS 228270, at \*16 (S.D. Ohio Nov. 9, 2022) ("Plaintiff's counsel in this action is very experienced in this area of the law. This Court previously – and repeatedly – has determined that their hourly rates are reasonable considering their experience, skill, and areas and level of expertise in the area of pizza delivery driver litigation.") (citations omitted).

Plaintiffs' counsel has also incurred $14,866.64 in costs. Thus, the settlement agreement provides counsel with $590,000.00 in attorneys' fees and $14,866.64 in reimbursement of advanced litigation costs.

Courts in the Sixth Circuit sometimes consider the *Ramey* factors when evaluating the reasonableness of requested attorneys' fees. The *Ramey* factors are: (1) the value of benefits rendered to the class; (2) society's take in rewarding attorneys who produce such benefits in order the maintain an incentive to others; (3) whether the services were undertaken on a contingent basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Most of these factors have been addressed above when addressing the Rule 23(e)(2) factors, but Plaintiffs will quickly address them here. Each of these factors weigh in favor of approving the fee.

First, the settlement results in a substantial benefit to the class. Based on the data produced by Defendants prior to mediation, the settlement proceeds negotiated for the class provides approximately 75% of the class's alleged unpaid wages calculated at the difference between the reimbursement rate paid and the applicable IRS standard business mileage rate. After deducting the advanced litigation costs, administrative costs, and incentive awards, the settlement proceeds

still provides approximately 70% of the class's unpaid wages. This is an excellent result considering there was a chance the drivers could have lost altogether. Compare *Mars Steel Corp.*, 834 F.2d at 682 (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral*, 2016 U.S. Dist. LEXIS 140759, * 21 (in class action owed for wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth*, 2010 U.S. Dist. LEXIS 20446, *12 (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, *17-18. "The attorneys who take on class action cases enable this." *Id.*, *citing Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, *26-27 (S.D. Ohio June 30, 2017). Society has a strong interest in rewarding lawyers who bring cases for unpaid wages. *Neal v. Hallsons of Leb., Inc.,* S.D. Ohio No. 1:20-cv-00672, 2022 U.S. Dist. LEXIS 42664 (Mar. 2, 2022); *see also Smith v. Local Cantina, LLC*, S.D. Ohio No. 2:20-cv-03064, 2022 U.S. Dist. LEXIS 73598 (Apr. 19, 2022) ("The Supreme Court has repeatedly held that FLSA rights are so important as to be wholly non-waivable. A strong public policy exists to compensate lawyers who take on these cases—typically on behalf of low-wage workers with few resources and against well-funded employers. These cases entail substantial risk, time, effort, and expertise to successfully litigate. It is therefore important that the lawyers who assume this type of representation be compensated in a way that is

commensurate with the resources required to do so. To do otherwise would undermine Congress's goal of encouraging private enforcement of FLSA rights.") (internal citations omitted).

Third, counsel undertook this case on a wholly-contingent basis, with no guarantee of recovery. *See* Ex. 2, ¶ 4. This supports the proposed fee award.

Fourth, while a lodestar cross-check is not required, it supports the requested attorneys' fees award. Here, Plaintiffs negotiated an attorney fee amount that is significantly less than their lodestar. As noted above, Plaintiffs' lead counsel, Biller & Kimble, has been consistently approved for rates higher than $500 per hour. *Estate of McConnell*, 2021 U.S. Dist. LEXIS 92836, at *4-5 (approving hourly rate of Andy Biller at $600 per hour); *Clark*, 2022 U.S. Dist. LEXIS 198354, at *20-21 (approving hourly rate of Andrew Kimble at $600 per hour). Likewise, appellate counsel used rates in line with their specific expertise in Supreme Court, appellate, and complex litigation with an emphasis on class-actions, worker rights, and consumer-protection cases. Nonetheless, Plaintiffs seek fees at an average rate of $408.79 per hour, or a 0.544× multiplier.

As numerous courts have found, counsel for the Plaintiffs have developed a deep level of expertise in the niche practice of challenging the sufficiency of delivery driver reimbursements. *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, at *20 (S.D. Ohio Nov. 5, 2020). That expertise has allowed them to represent Plaintiff and the class effectively and efficiently. *Id*. In addition to the hours class counsel has worked on this particular pizza delivery driver case, Biller & Kimble, LLC has worked thousands of hours on pizza delivery driver cases and other types of wage and hour cases throughout the country in recent years. *See Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *6 (noting counsels' expertise in this specific area of law); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *20-21 (explaining that it is appropriate to consider work on similar cases in

deciding whether a fee is reasonable). These hours informed class counsel's work in this case and made them more efficient.

Further, Plaintiff's counsel will put in more time on this case after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19. This factor supports the requested fee award. *See, e.g., Id.* (approving 5.29 multiplier); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at *17 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable). In light of class counsel's experience and expertise in wage and hour law, their hourly rates are appropriate, and their request for less than the lodestar expended is reasonable.

Fifth, courts have held wage and hour cases to be "inherently complex," and that these delivery driver reimbursement lawsuits "turn on a web of statutory and regulatory issues." *Mullins v. Data Mgt. Co.*, No. 1:20-cv-214, 2021 U.S. Dist. LEXIS 124891, at *9 (S.D. Ohio June 21, 2021); *Neal v. Hallsons of Leb., Inc.*, No. 1:20-cv-00672, 2022 U.S. Dist. LEXIS 42664, at *4 (S.D. Ohio Mar. 2, 2022). Wage and hour cases often raise complex legal issues involving the changing landscape of federal and state law, regulations, agency guidance, and case law. *Smith*, 2022 U.S. Dist. LEXIS 73598 at *17. Here, the operative legal standard for determining minimum wage compliance in the context of delivery drivers was contested, and significant disputes remained as to the application of the Sixth Circuit's decision on appeal. This factor supports approval of the requested fee award.

Sixth, the attorneys for both sides are skilled litigators experienced with these specific claims, as well as class and collective actions. Hubbard Decl., Doc. 66-2, ¶¶25-30. Similarly, Kathleen McLeod Caminiti, a partner with Fisher & Phillips, LLP, is likewise a highly experienced employment lawyer and litigator. This factor supports the requested fee award.

Finally, class counsel will receive their attorneys' fees and costs at the same time that the class members receive their individual settlement shares. This supports the request fee award.

The attorneys' fees contemplated by the agreement are reasonable. Rule 23(e)(2)(C)(iii) supports approval of the settlement.

*Rule 23(e)(2)(C)(iv).* In connection with the proposal, the named plaintiffs will enter a separate, supplemental Settlement Agreement. The supplemental settlement agreement provides that each named plaintiff will receive a service award in the amount of $10,000, in consideration for which they each will agree to a general release of claims broader than the release provided in the class settlement.. The settlement documents, including the supplemental Settlement Agreements, set forth all relevant agreements, including that the settling parties have agreed that the named plaintiffs will receive a $10,000 service award in exchange for a general release. Courts routinely approve such service awards, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).

*Rule 23(e)(2)(D).* Finally, the proposed settlement treats the class members equitably relative to each other. The class members will share the settlement according to their proportionate

share of the total miles driven by the entire class. The two exceptions are that individuals who opted in previously for purposes of their FLSA claims will have their miles driven counted at 1.1× per mile to account for the fact that they have preserved more of their claims than the others, and drivers who worked in Ohio will have their miles multiplied by 1.5× to account for treble damages permitted under Ohio wage law. This factor supports approval of the settlement.

All of the factors listed in Rule 23(e)(2) support preliminary approval of the settlement. The Court can evaluate the class's reaction to the settlement at the Final Fairness Hearing, after notice is complete.

### c. The Court should approve the parties' proposed Notice of Settlement.

Finally, since the Court is likely to be able to certify the class and approve the settlement, it should direct notice in a reasonable manner to all class members who would be bound by the proposal. Rule 23(e)(1)(B). The settlement agreement provides a proposed notice to be sent to class members by U.S. mail and email. The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See generally* Exhibit 1 to Settlement Agreement, Notice of Settlement. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A). The Court should direct distribution of the class notice in the manner described in the settlement agreement. *See* Ex. 1.

## IV.    The Court should set a hearing for Final Approval.

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 100 days after the Court grants preliminary approval of the proposed settlement. This date will allow a reasonable period for the class notices to be mailed and for class members to object or opt-out of the settlement, but it will not unduly delay the case's adjudication.

## V.    Conclusion

Plaintiff asks the Court to enter an Order preliminarily approving the parties' Rule 23 class settlement agreement, authorizing the administrator to disseminate the notice to the class, and setting a Final Fairness Hearing approximately 100 days after the Court's Order granting preliminary approval.

Respectfully submitted,

*/s/ Emily A. Hubbard*
Andrew R. Biller
Andrew P. Kimble
Emily Hubbard
Laura Farmwald
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*
*lfarmwald@billerkimble.com*

*Counsel for Plaintiff and the putative class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed electronically. The parties were served through the Court's electronic filing system.

*/s/ Emily A. Hubbard*
Emily Hubbard